# <u>EXHIBIT A</u>

## Second Amended Plan

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| UTGR, INC. d/b/a TWIN RIVER, et al.,[1] | ) Case No. 09-12418 (ANV) |
| | ) |
| | ) Jointly Administered |
| | ) |

**DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

WINOGRAD, SHINE & ZACKS, P.C.
123 Dyer Street
Providence, Rhode Island  02903
Telephone:  (401) 273-8300
Facsimile:  (401) 272-5728
Allan M. Shine
Diane Finkle

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Paul M. Basta
Stephen E. Hessler

Dated:   January 26, 2010

Counsel to the Debtors and Debtors in Possession

---

[1]   The Debtors in these chapter 11 cases are BLB Management Services, Inc., BLB Worldwide Holdings, Inc., and UTGR, Inc.

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

**ARTICLE I. DEFINITIONS AND INTERPRETATION** ...........................................................1
    A.    Defined Terms. ...........................................................................................1
    B.    Rules of Interpretation. ............................................................................11
    C.    Computation of Time. ..............................................................................12

**ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS** ...........13
    A.    Administrative Expense Claims. ...............................................................13
    B.    Professional Compensation and Reimbursement Claims. ..........................13
    C.    Priority Tax Claims. .................................................................................13

**ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS** ........................................14
    A.    BLB Worldwide Holdings .........................................................................14
    B.    BLB Management Services .........................................................................14
    C.    UTGR .......................................................................................................14

**ARTICLE IV. TREATMENT OF CLAIMS AND INTERESTS** ................................................16
    A.    BLB Worldwide Holdings .........................................................................16
    B.    BLB Management Services .........................................................................18
    C.    UTGR .......................................................................................................20

**ARTICLE V. IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS;**
     **ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION** ...................23
    A.    Classes Entitled to Vote. ...........................................................................23
    B.    Classes Not Entitled to Vote; Deemed to Accept. ......................................23
    C.    Classes Not Entitled to Vote; Deemed to Reject. .......................................23
    D.    Nonconsensual Confirmation. ...................................................................23

**ARTICLE VI. PROVISIONS FOR IMPLEMENTATION OF THE PLAN** .................................24
    A.    Sources of Consideration for Plan Distributions. ......................................24
    B.    Reorganized Debtors' Equity Interests. .....................................................24
    C.    First Lien Agent and Second Lien Agent. ..................................................24
    D.    New Senior Secured Credit Facility. ..........................................................24
    E.    Second Lien Facility Claim Contingent Value Right. ..................................24
    F.    Treatment of the Dimeo Claim. ................................................................25
    G.    Corporate Existence. ................................................................................25
    H.    Vesting of Assets in the Reorganized Debtors. ...........................................25
    I.    Cancellation of Securities and Agreements. ..............................................25
    J.    Discharge of Debtors. ..............................................................................25
    K.    Restructuring Transactions. ......................................................................26
    L.    Alternative Structure. ...............................................................................26
    M.    Exemption from Certain Transfer Taxes and Recording Fees. .....................26
    N.    Board Representation. ..............................................................................26
    O.    Senior Management. .................................................................................27
    P.    Management Incentive Plan. .....................................................................27
    Q.    Stock Option Program. .............................................................................27
    R.    Employee and Retiree Benefits. .................................................................27
    S.    Creation of Holdback Escrow Account. ......................................................27
    T.    Preservation of Rights of Action. ..............................................................27

**ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS** ..............................................29
    A.    Assumption and Rejection of Executory Contracts. ...................................29
    B.    Indemnification Obligations. ....................................................................29

i

C.      Cure of Defaults for Assumed Executory Contracts. ...................................................29
D.      Claims Based on Rejection or Repudiation of Executory Contracts. ............................30
E.      Reservation of Rights. ...................................................................................................30

**ARTICLE VIII. PROCEDURES FOR RESOLVING CLAIMS AND DISPUTES** ...........................................**31**
A.      Allowance of Claims and Interests. ...............................................................................31
B.      Claims and Interests Administration Responsibilities. ...................................................31
C.      Estimation of Claims and Interests. ...............................................................................31
D.      Adjustment to Claims and Interests Without Objection. .................................................31
E.      Disallowance of Claims or Interests. .............................................................................31
F.      Offer of Judgment. ........................................................................................................31
G.      Amendments to Claims. .................................................................................................32

**ARTICLE IX. PROVISIONS GOVERNING DISTRIBUTIONS** ...............................................................**33**
A.      Distributions on Account of Claims and Interests Allowed as of the Effective Date. .....33
B.      Distributions on Account of Claims and Interests Allowed After the Effective Date. ......33
C.      Delivery of Distributions. ...............................................................................................33
D.      Claims Paid or Payable by Third Parties. ......................................................................35
E.      Allocation Between Principal and Accrued Interest. .......................................................35

**ARTICLE X. EFFECT OF PLAN CONFIRMATION.** ...............................................................................**36**
A.      Discharge of Claims and Termination of Interests. ........................................................36
B.      Compromise and Settlement of Claims and Controversies. ...........................................36
C.      **Releases by the Debtors.** .............................................................................................36
D.      **Releases by Third Parties.** ...........................................................................................37
E.      **Injunction.** ....................................................................................................................37
F.      **Exculpation.** .................................................................................................................37
G.      Protection Against Discriminatory Treatment. ...............................................................38
H.      Setoffs and Recoupment. ..............................................................................................38
I.      Release of Liens. ...........................................................................................................38
J.      Reimbursement or Contribution. ....................................................................................38

**ARTICLE XI. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE EXPENSE**
        **CLAIMS** .......................................................................................................................**39**
A.      Professional Claims. ......................................................................................................39
B.      Other Administrative Expense Claims. ...........................................................................40

**ARTICLE XII. CONDITIONS PRECEDENT TO EFFECTIVE DATE** ...................................................**41**
A.      Conditions Precedent to Effective Date. ........................................................................41
B.      Waiver of Conditions Precedent. ...................................................................................41
C.      Effect of Non-Occurrence of Conditions to the Effective Date. ......................................41

**ARTICLE XIII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ...................**42**
A.      Modification or Amendments. .........................................................................................42
B.      Effect of Confirmation on Modifications. ........................................................................42
C.      Revocation or Withdrawal of Plan. ................................................................................42

**ARTICLE XIV. RETENTION OF JURISDICTION** ..................................................................................**43**

**ARTICLE XV. MISCELLANEOUS PROVISIONS** .....................................................................................**45**
A.      Immediate Binding Effect. ..............................................................................................45
B.      Additional Documents. ...................................................................................................45
C.      Payment of Statutory Fees. ...........................................................................................45
D.      Dissolution of the Creditors' Committee. .......................................................................45
E.      Reservation of Rights. ...................................................................................................45
F.      Successors and Assigns. ...............................................................................................45

G.     Service of Documents. ....................................................................................45
H.     Term of Injunctions or Stays. .........................................................................46
I.     Entire Agreement. ...........................................................................................46
J.     Governing Law. ...............................................................................................46
K.     Exhibits. ...........................................................................................................47
L.     Closing of Chapter 11 Cases. ..........................................................................47
M.     Waiver or Estoppel...........................................................................................47
N.     Conflicts............................................................................................................47

**INTRODUCTION**

UTGR, Inc. ("UTGR") and the other Debtors in the above-captioned chapter 11 cases (collectively, the "Debtors") propose the following second amended joint plan of reorganization (the "Plan") for the resolution of claims against and interests in the Debtors pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

Reference is made to the Disclosure Statement, Filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I.**

**DEFINITIONS AND INTERPRETATION**

A.     Defined Terms.  As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires.

1.     "Accrued Professional Compensation" means, at any given moment, all accrued fees and expenses for services rendered by all Professionals through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.     "Administrative Expense Claim" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Claims of retained Professionals in the Chapter 11 Cases; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

3.     "Administrative Expense Claim Bar Date" means the date that is the forty-fifth (45th) day after the Effective Date.

4.     "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.     "Allowed" means, with respect to any Claim against any Debtor, except as otherwise provided herein, any Claim listed by such Debtor in its books and records as liquidated in amount and not disputed or contingent; provided, that to the extent that a Claim is a Disputed Claim, the determination of whether such Claim shall be allowed and/or the amount of any such Claim shall be determined, resolved or adjudicated, as the case may be, in the manner in which such Claim would have been determined, resolved or adjudicated, as the case may be, if the Chapter 11 Cases had not been commenced; and provided, further, the Debtors or Reorganized Debtors in their discretion may bring any objection or other motion with respect to a Disputed Claim for resolution. For the purpose of determining the amount in which a Claim is Allowed, the Debtors or Reorganized Debtors may, at their option, deduct therefrom an amount equal to the amount of any claim which the Debtors or Reorganized Debtors may hold against the Holder thereof, to the extent such claim may be set off pursuant to applicable law.

6.     "Amended and Restated Bylaws" means the bylaws of the Reorganized Debtors, attached as Exhibit 1 to the Plan Supplement.

7.     "Amended and Restated Certificates of Incorporation" means the certificates of incorporation of the Reorganized Debtors, attached as Exhibit 2 to the Plan Supplement.

8.     "Amended Consent Order" means that order entered by the Rhode Island Superior Court on November 21, 2008, based on a consolidated action brought by a construction company and its subcontractors

seeking payment for services provided to the Debtors' Rhode Island facility, which is secured by certain mechanic's liens in the Project Property in the amount of $5,741,151.

9.      "Avoidance Actions" means any and all actual or potential Claims to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code.

10.      "Ballot" means the ballot upon which Holders of Impaired Claims entitled to vote shall cast their vote to accept or reject the Plan.

11.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

12.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Rhode Island.

13.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075.

14.      "Bar Date" means October 26, 2009, the date by which all Claims against the Debtors have to be Filed, except for (a) Administrative Expense Claims and (b) Claims Filed by Governmental Units.

15.      "BLB Management Services" means BLB Management Services, Inc.

16.      "BLB Worldwide Holdings" means BLB Worldwide Holdings, Inc.

17.      "Board of Directors" means the boards of directors of the Reorganized Debtors and Newco (if created).

18.      "Business Day" means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

19.      "Cash" means legal tender of the United States of America.

20.      "Causes of Action" means all actions, causes of action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

21.      "Certificate" means any instrument evidencing a Claim or an Interest.

22.      "Chapter 11 Cases" means (a) when used with reference to a particular Debtor, the chapter 11 case Filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all Debtors, the procedurally-consolidated chapter 11 cases for all of the Debtors.

23.      "Claim" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

24.      "Claims Objection Deadline" means, for each Claim, the later of (a) 120 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claim.

25.      "Claims Register" means the official register of Claims or Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

26.     "Class" means any group of substantially similar Claims or Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

27.     "Collateral" means any property or interest in property of the estates of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

28.     "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

29.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

30.     "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

31.     "Confirmation Hearing Notice" means the notice of the Confirmation Hearing that sets forth in detail the voting and objection deadlines with respect to the Plan.

32.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

33.     "Consummation" means the occurrence of the Effective Date.

34.     "Convenience Claim" means any:  (a) General Unsecured Claim against UTGR that is Allowed in an amount of $2,500 or less, or (b) General Unsecured Claim against UTGR in excess of $2,500 which the Holder thereof, pursuant to such Holder's ballot (or other election accepted by the Debtors), elects to have reduced to the amount of $2,500 and to be treated as a Convenience Claim.

35.     "Creditor" means any Holder of a Claim.

36.     "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the United States Trustee for the District of Rhode Island on June 30, 2009 [Docket No. 85], with such additions and changes as may have occurred from time to time.

37.     "Cure" means the payment of Cash by the Debtors, or the distribution of other property (as the applicable Debtors and the counterparty to the applicable Executory Contract or Unexpired Lease may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtors and (b) permit the Debtors to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

38.     "Cure Bar Date" means the deadline for filing requests for payment of Cure, which shall be the later of:  (a) thirty (30) days after the Effective Date or (b) thirty (30) days after the assumption of the applicable Executory Contract, unless otherwise ordered by the Bankruptcy Court or agreed to by the Debtors and the counterparty to the applicable Executory Contract.

39.     "Cure Claim" means a Claim based upon the Debtors' defaults on an Executory Contract or an Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

40.     "D&O Liability Insurance Policies" means all Prepetition and Postpetition insurance policies for directors' and officers' liability maintained by the Debtors.

41.     "Debtor" means one of the Debtors, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

42.     "Debtors" means, collectively, BLB Management Services, BLB Worldwide Holdings, and UTGR.

43.     "Debtors in Possession" means, collectively, the Debtors, as debtors in possession in these Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

44.     "Dimeo" means Dimeo Construction Company.

45.     "Dimeo Claim" means the Claim(s) Dimeo is asserting on behalf of itself and other Entities (including those Entities that are parties to the Amended Consent Order).

46.     "Disclosure Statement" means the second amended disclosure statement for the Plan, as amended, supplemented or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

47.     "Disputed Administrative Expense Claim" means any Administrative Expense Claim that, as of the date of determination, is a Disputed Claim.

48.     "Disputed Claim" means any Claim against or Interest in any Reorganized Debtor which such Reorganized Debtor believes is unliquidated, disputed or contingent, and which has not been allowed by Final Order of a court of competent jurisdiction or by agreement with such Reorganized Debtor.

49.     "Disputed Claims Reserve" means the reserve established and maintained by the Reorganized Debtors to hold Cash to be distributed, as applicable, to Holders of Allowed Claims pending resolution of Disputed Claims.

50.     "Disputed General Unsecured Claim" means any General Unsecured Claim that, as of the date of determination, is a Disputed Claim.

51.     "Disputed Priority Tax Claim" means any Priority Tax Claim that, as of the date of determination, is a Disputed Claim.

52.     "Distribution Agent" means the Reorganized Debtors, or the Entity or Entities selected by the Debtors or Reorganized Debtors, to make or facilitate distributions pursuant to the Plan.

53.     "Distribution Date" means the date occurring as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence, but not later than ten (10) days after the Effective Date, without further Bankruptcy Court order.

54.     "Effective Date" means the date that all conditions to the effectiveness of the Plan have been satisfied or waived.

55.     "Employment Agreements" means the employment agreements for the Reorganized Debtors' Chief Operating Officer and General Counsel, attached as Exhibit 3 to the Plan Supplement.

56.     "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

57.     "Equity Interests" means any:  (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors, together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto, and (b) partnership, limited liability company, or similar interest in a Debtor.

58.     "Equity Security" has the meaning set forth in section 101(16) of the Bankruptcy Code.

4

59.     "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated thereunder.

60.     "Estate" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

61.     "Exchange Act" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq., as now in effect and hereafter amended.

62.     "Exculpated Claim" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtors' in or out-of-court restructuring efforts, the Debtors' Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance of New Common Stock, the entry into the New Senior Secured Credit Facility, or the distribution of property under the Plan or any other agreement.

63.     "Exculpated Party" means each of:  (a) the Debtors, the Reorganized Debtors, and their Affiliates; (b) the First Lien Agent and the First Lien Lenders, in each case, in their capacity as such; (c) the Second Lien Agent and the Second Lien Lenders, in each case, in their capacity as such; (d) the Creditors' Committee and the members thereof in their capacity as such; (e) the State, and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, Affiliates and representatives.

64.     "Executory Contract" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

65.     "Federal Judgment Rate" means the federal judgment rate in effect on the Petition Date.

66.     "File" means to file with the Bankruptcy Court in the Chapter 11 Cases, or in the case of a Proof of Claim or Interest, to file with the Notice, Claims and Solicitation Agent.

67.     "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

68.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely-filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

69.     "First Lien Agent" means Merrill Lynch Capital Corporation, as administrative agent under the First Lien Facility, or any successor agent appointed in accordance with such agreement.

70.     "First Lien Facility" means that certain Third Amended and Restated Credit Agreement, dated as of June 30, 2005 and amended and restated as of July 18, 2005, as further amended and restated as of August 11, 2005, as further amended and restated as of August 23, 2005, and as further amended as of August 22, 2006, among BLB Worldwide Holdings,[2] the Guarantors listed on the signature pages thereto and otherwise party hereto from

---

[2]     BLB Worldwide Holdings was the initial borrower under the First Lien Facility, but upon BLB Worldwide Holdings' acquisition of Wembley, Inc., the owner and operator at that time of the Twin River gaming facility, BLB Worldwide Holdings simultaneously transferred

(Continued…)

time to time, the several financial or other lending institutions party thereto from time to time as lenders, Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, as Joint Lead Arranger and Book Runner, Deutsche Bank Securities Inc., as Syndication Agent, Joint Lead Arranger and Book Runner, J.P. Morgan Securities Inc., as Joint Lead Arranger and Book Runner, Merrill Lynch Capital Corporation, as Administrative Agent, and JPMorgan Chase Bank, N.A., as Documentation Agent (together with all agreements, instruments and documents delivered or entered into in connection with or with respect thereto).

71.    "First Lien Facility Claim" means a claim arising under the First Lien Facility.

72.    "First Lien Facility Guarantee" means the guarantees issued by BLB Worldwide Holdings and UTGR as Guarantors under the First Lien Facility.

73.    "First Lien Facility Guarantee Claim" means a claim arising under the First Lien Facility Guarantee.

74.    "First Lien Lenders" means those lenders under the First Lien Facility and their successors and assigns.

75.    "General Counsel" means the individual who holds the position of Senior Vice President, General Counsel, and Secretary of the Reorganized Debtors.

76.    "General Unsecured Claim" means any unsecured Claim not otherwise classified pursuant to this Plan.

77.    "Global Resolution" means the global resolution to Disclosure Statement and Plan objections reached on January 25, 2010 between and among the Debtors, the First Lien Lenders, the Creditors' Committee, and Dimeo, attached as Exhibit 7 to the Plan Supplement.  The Global Resolution also resolved the United States Trustee's objection to the Disclosure Statement.

78.    "Governmental Unit" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

79.    "Governmental Unit Bar Date" means February 23, 2010, the date by which all Claims against the Debtors have to be Filed by Governmental Units.

80.    "Holdback Amount" means the aggregate holdback of those Professional fees billed to the Debtors during the Chapter 11 Cases that have been held back pursuant to the Professional Fee Order or any other order of the Bankruptcy Court, which amount is to be deposited in the Holdback Escrow Account as of the Effective Date. The Holdback Amount shall not be considered property of the Debtors or the Reorganized Debtors.

81.    "Holdback Escrow Account" means the escrow account established by the Reorganized Debtors into which Cash equal to the Holdback Amount shall be deposited on the Effective Date for the payment of Allowed Professional Fee Claims to the extent not previously paid or disallowed.

82.    "Holder" means an Entity holding a Claim.

83.    "Impaired" means Claims in an Impaired Class.

---

and assigned all rights and obligations under the First Lien Facility to Wembley, Inc. pursuant to that certain assumption agreement dated July 18, 2005, effectively rendering Wembley, Inc. as the primary borrower under the First Lien Facility.  Wembley, Inc. subsequently amended its certificate of incorporation and renamed itself BLB Management Services.

84.     "Impaired Class" means an impaired class within the meaning of section 1124 of the Bankruptcy Code.

85.     "Indemnification Obligation" means a Debtor's obligation under an Executory Contract or otherwise to indemnify directors, officers, or employees of such Debtor who served in such capacity at any time, with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtor's respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.

86.     "Intercompany Claim" means any Claim held by a Debtor against another Debtor or any Claim held by an Affiliate against a Debtor.

87.     "Intercompany Interest" means an Equity Interest in a Debtor held by another Debtor.

88.     "Intercreditor Agreement" means that certain Second Amended and Restated Intercreditor Agreement dated July 18, 2005, as amended and restated as of August 11, 2005 and as further amended and restated as of August 23, 2005.

89.     "Interests" mean, collectively, Equity Interests and Intercompany Interests.

90.     "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

91.     "Kerzner Entities" mean Kerzner Investments Acquisitions Limited, a British Virgin Islands company, Kerzner Investments BLB, Inc., a Delaware corporation, each a directly or indirectly wholly owned subsidiary of Kerzner International Ltd., a Bahamian international business company, and Kerzner International Ltd.

92.     "Lenders" mean, collectively, the First Lien Lenders and the Second Lien Lenders.

93.     "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

94.     "Local Bankruptcy Rules" mean the Local Bankruptcy Rules and Forms for the United States Bankruptcy Court for the District of Rhode Island.

95.     "Management Incentive Plan" means the management incentive plan adopted Prepetition by the Debtors, and amended Postpetition by the Debtors and the First Lien Lenders, as detailed in the Debtors' Motion For Entry Of An Order (A) Authorizing Debtors To Make Payments Under Amended Management Incentive Plan And (B) Authorizing Debtors To Enter Into Employment Agreements, filed on September 9, 2009 [Docket No. 287].

96.     "Newco" means the newly created Entity that may be organized by the Holders of the First Lien Facility Claims to effectuate the Plan, as described in Article VI hereof.

97.     "New Common Stock" means the new common stock of reorganized BLB Worldwide Holdings.

98.     "Newco Common Stock" means the common stock of Newco (if created).

99.     "New Senior Secured Credit Facility" means the senior secured credit facility to be provided by the First Lien Credit Facility Agent, which shall be secured by a first lien on all of the assets of the Reorganized Debtors and issued pursuant to a new credit agreement in the form of Exhibit 4 to the Plan Supplement.

100.    "Notice, Claims and Solicitation Agent" means Donlin, Recano & Company, Inc., located at 419 Park Avenue South, New York, New York 10016, retained as the Debtors' notice, claims and solicitation agent.

101.    "Other Priority Claim" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim and a Priority Tax Claim.

102.    "Other Secured Claim" means any Secured Claim that is not a First Lien Facility Claim or a Second Lien Facility Claim.

103.    "Periodic Distribution Date" means the first Business Day that is as soon as reasonably practicable occurring approximately ninety (90) days after the Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety (90) days after the immediately preceding Periodic Distribution Date.

104.    "Person" means any individual, corporation, partnership, joint venture, association, limited liability company, joint stock company, trust, unincorporated organization, government or agency or political subdivision thereof or any other Entity.

105.    "Petition Date" means June 23, 2009, the date on which the Debtors Filed their voluntary petitions commencing these Chapter 11 Cases in the Bankruptcy Court.

106.    "Plan" means this second amended joint plan of reorganization, including the exhibits hereto or contained in the Plan Supplement.

107.    "Plan Supplement" means the compilation of documents and forms of documents and exhibits to the Plan Filed herewith, as supplemented or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

108.    "Postpetition" means the period of time beginning on and following the Petition Date.

109.    "Prepetition" means the period of time before the Petition Date.

110.    "President" means the individual who holds the position of President, Chief Operating Officer, and Treasurer of the Reorganized Debtors.

111.    "Priority Non-Tax Claims" mean any and all Claims entitled to priority in payment as specified in section 507(a)(4), (5), (6), or (7) of the Bankruptcy Code.

112.    "Priority Tax Claim" means any and all Claims of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

113.    "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in that particular Class and in other Classes entitled to share in the same recovery as such Allowed Claims under the Plan.

114.    "Professional" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363 or 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

115.    "Professional Compensation and Reimbursement Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

116.    "Professional Fee Order" means that certain order of the Bankruptcy Court entered on July 15, 2009 [Docket No. 160], as amended on September 16, 2009 [Docket No. 289], establishing procedures for interim compensation and reimbursement of expenses of Professionals.

117.    "Project Property" means the property described in Dimeo Construction Company's mechanic's lien filings relating to the Lincoln Park Gaming & Entertainment Facility.

118.    "Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

119.    "Rejected Executory Contract List" means the list (as may be amended), as determined by the Debtors or Reorganized Debtors, of Executory Contracts (including any amendments or modifications thereto) that will be rejected by the Reorganized Debtors pursuant to the provisions of Article VII of this Plan.

120.    "Rejection Damages Claim" means any Claim on account of the rejection of an Executory Contract pursuant to section 365 of the Bankruptcy Code or the repudiation of such contract (but not including the RIGOA Claim).

121.    "Released Party" means each of the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders, the Creditors' Committee, the Sponsor Entities, Sponsor Representatives, and, with respect to each releasing Debtor, each other Debtor, and each of respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates and representatives of each of the foregoing parties.

122.    "Reorganized Debtors" means, collectively, the Debtors after the Effective Date.

123.    "Restructuring Agreement" means the Prepetition agreement reached between the Debtors, the Lenders, and the State on the terms of a preliminary restructuring transaction, attached as Exhibit 5 to the Plan Supplement.

124.    "RIGOA" means the Rhode Island Greyhound Owners Association, Inc.

125.    "RIGOA Claim" means the Plan treatment provided for in the RIGOA Settlement.

126.    "RIGOA Settlement" means the amended settlement agreement entered into between the Debtors, the First Lien Agent, and the RIGOA, and approved by the Bankruptcy Court on November 18, 2009 [Docket No. 416], attached as Exhibit 6 to the Plan Supplement.

127.    "Schedules" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

128.    "Second Lien Agent" means The Bank of New York Mellon, as administrative agent under the Second Lien Facility, or any successor agent appointed in accordance with such agreement.

129.    "Second Lien Facility" means that certain Second Amended and Restated Credit Agreement, dated as of July 18, 2005 and amended and restated as of August 11, 2005, further amended and restated as of August 23, 2005, and further amended as of August 22, 2006, among BLB Worldwide Holdings, the Guarantors listed on the signature pages thereto and otherwise party hereto from time to time, the several financial or other lending institutions party thereto from time to time as lenders, Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, as Joint Lead Arranger and Book Runner, Deutsche Bank Securities Inc., as Syndication Agent, Joint Lead Arranger and Book Runner, J.P. Morgan Securities Inc., as Joint Lead Arranger and Book Runner, Merrill Lynch Capital Corporation, as Administrative Agent (as succeeded to by The Bank of New York Mellon), and JPMorgan Chase Bank, N.A., as Documentation Agent (together with all agreements, instruments and documents delivered or entered into in connection with or with respect thereto).

130.    "Second Lien Facility Claim" means a claim arising under the Second Lien Facility.

131.    "Second Lien Facility Claim Contingent Value Right" means the treatment for Holders of Second Lien Facility Claims, as described in Article VI.E.

132.    "Second Lien Facility Guarantee" means the guarantees issued by BLB Worldwide Holdings and UTGR as Guarantors under the Second Lien Facility.

133.    "Second Lien Facility Guarantee Claim" means a claim arising under the Second Lien Facility Guarantee.

134.    "Second Lien Lenders" means those lenders under the Second Lien Facility and their successors and assigns.

135.    "Secured Claim" means, with respect to any Claim against any Debtor, that portion which, pursuant to section 506 of the Bankruptcy Code, is (a) secured by a valid, perfected, and enforceable security interest, Lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or nonbankruptcy law, in or upon any right, title or interest of a Debtor in and to property of the relevant estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date or (b) Allowed as such pursuant to the terms of the Plan (subject to the occurrence of the Effective Date).

136.    "Securities Act" means the Securities Act of 1933, as amended.

137.    "Security" means any instrument that qualifies under section 2(a)(1) of the Securities Act.

138.    "Servicer" means an indenture trustee, agent, servicer or other authorized representative of Holders of Claims or Interests recognized by the Debtors.

139.    "Sponsor Entities" mean BLB Investors, LLC, a Delaware limited liability company, the Starwood Entities, the Kerzner Entities, and the Waterford Entities.

140.    "Sponsor Representatives" mean Madison Grose, Richard Levine, Len Wolman, and Dan Yih.

141.    "Starwood Entities" mean Starbell Investors, L.L.C., a Delaware limited liability company, SOF-VI U.S. Holdings, L.L.C., a Delaware limited liability company, Starwood Global Opportunity Fund VI-A, L.P., a Delaware limited partnership, Starwood Global Opportunity Fund VI-B, L.P., a Delaware limited partnership, Starwood Global Opportunity Fund VI-D, L.P., a Delaware limited partnership, SOF-VI Management, L.L.C., a Delaware limited liability company, and Starwood Capital Group Global I, L.L.C., a Connecticut limited liability company.

142.    "State" means the executive branch of the State of Rhode Island.

143.    "Swap Agreements" mean those certain interest rate protection agreements the Debtors entered into Prepetition with certain lenders under the First Lien Facility or their affiliates.

144.    "Swap Agreements Claim" means a claim arising under the Swap Agreements.

145.    "Swap Agreements Guarantee" means the guarantees issued by BLB Worldwide Holdings and UTGR as Guarantors under the Swap Agreements.

146.    "Swap Agreements Guarantee Claim" means a claim arising under the Swap Agreements Guarantee.

147.    "Unclaimed Distribution" means any distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

148. "<u>Unexpired Lease</u>" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

149. "<u>Unimpaired</u>" has the meaning set forth in section 1124 of the Bankruptcy Code.

150. "<u>United States Trustee</u>" means the Office of the United States Trustee for the District of Rhode Island.

151. "<u>Unsecured Claim</u>" means any Claim that is neither secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, including any Rejection Damages Claim.

152. "<u>UTGR</u>" means UTGR, Inc.

153. "<u>Voting Deadline</u>" means the date determined by an order of the Bankruptcy Court by which vote to accept or reject the Plan must be cast.

154. "<u>Waterford Entities</u>" mean Waterford Group Investments, L.L.C., a Delaware limited liability company and Waterford Group, L.L.C., a Delaware limited liability company.

B.    <u>Rules of Interpretation</u>.  For purposes of the Plan:

1. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or gender-neutral shall include the masculine, feminine, and the gender-neutral;

2. Any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions;

3. Unless otherwise specified, any reference in the Plan to an existing document or exhibit, whether or not filed with the Bankruptcy Court, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented in accordance with its terms;

4. Any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns;

5. Unless otherwise specified, all references in the Plan to "Articles" are references to Articles of the Plan;

6. Unless otherwise specified, all references in the Plan to exhibits are references to exhibits in the Plan Supplement;

7. The words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

8. Subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and Bankruptcy Rules;

9. Captions and headings of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

10. Unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

11.     Any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

12.     All references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system;

13.     All references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and

14.     Any immaterial effectuating provisions may be interpreted by the Reorganized Debtors after the Effective Date in such a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order.

C.     Computation of Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.

## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

A.      Administrative Expense Claims.   Except with respect to Administrative Expense Claims that are Professional Compensation and Reimbursement Claims and except to the extent that a Holder of an Allowed Administrative Expense Claim and the applicable Debtors agree to less favorable treatment to such Holder, each Holder of an Allowed Administrative Expense Claim shall be paid in full in Cash on the later of the Distribution Date under the Plan, the date such Administrative Expense Claim is Allowed, and the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

B.      Professional Compensation and Reimbursement Claims.   Except as provided in Article II.A hereof, all Entities seeking approval by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (1) File, on or before the date that is ninety (90) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (2) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or Allowing any such Administrative Expense Claim. The Reorganized Debtors are authorized to pay compensation for Professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

C.      Priority Tax Claims.   Each Holder of an Allowed Priority Tax Claim shall receive, on the Distribution Date or such later date as such Allowed Priority Tax Claim becomes due and payable, at the option of the Debtors, one of the following treatments on account of such Claim:  (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable nonbankruptcy law; (2) such other treatment as may be agreed to by such Holder and the applicable Debtors or otherwise determined upon an order of the Bankruptcy Court; or (3) treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.

### CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class, and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

A.      BLB Worldwide Holdings

1.      **Class A-1** shall consist of all First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against BLB Worldwide Holdings.

2.      **Class A-2** shall consist of all Second Lien Facility Guarantee Claims against BLB Worldwide Holdings.

3.      **Class A-3** shall consist of all Priority Non-Tax Claims that may exist against BLB Worldwide Holdings.

4.      **Class A-4** shall consist of all Secured Claims that may exist against BLB Worldwide Holdings.

5.      **Class A-5** shall consist of all General Unsecured Claims and Rejection Damages Claims that may exist against BLB Worldwide Holdings.

6.      **Class A-6** shall consist of all Intercompany Claims that may exist against BLB Worldwide Holdings.

7.      **Class A-7** shall consist of all Interests in BLB Worldwide Holdings.

B.      BLB Management Services

1.      **Class B-1** shall consist of all First Lien Facility Claims and Swap Agreements Claims against BLB Management Services.

2.      **Class B-2** shall consist of all Second Lien Facility Claims against BLB Management Services.

3.      **Class B-3** shall consist of all Priority Non-Tax Claims that may exist against BLB Management Services.

4.      **Class B-4** shall consist of all Secured Claims that may exist against BLB Management Services.

5.      **Class B-5** shall consist of all General Unsecured Claims and Rejection Damages Claims that may exist against BLB Management Services.

6.      **Class B-6** shall consist of all Intercompany Claims that may exist against BLB Management Services.

7.      **Class B-7** shall consist of all Intercompany Interests in BLB Management Services.

C.      UTGR

1.      **Class C-1** shall consist of all First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against UTGR.

14

2.      **Class C-2** shall consist of all Second Lien Facility Guarantee Claims against UTGR.

3.      **Class C-3** shall consist of all Priority Non-Tax Claims that may exist against UTGR

4.      **Class C-4** shall consist of all Secured Claims that may exist against UTGR.

5.      **Class C-5** shall consist of all General Unsecured Claims, the RIGOA Claim, the Dimeo Claim, and Rejection Damages Claims that may exist against UTGR.

6.      **Class C-6** shall consist of all Convenience Claims that may exist against UTGR.

7.      **Class C-7** shall consist of all Intercompany Claims that may exist against UTGR.

8.      **Class C-8** shall consist of all Intercompany Interests in UTGR.

## ARTICLE IV.

### TREATMENT OF CLAIMS AND INTERESTS

To the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below.

A.      BLB Worldwide Holdings

1.      **Class A-1:  First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against BLB Worldwide Holdings**

(a)      Classification.  Class A-1 consists of all First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against BLB Worldwide Holdings.

(b)      Impairment and Voting.  Class A-1 is Impaired by the Plan.  Each Holder of an Allowed First Lien Facility Guarantee Claim and/or Allowed Swap Agreements Guarantee Claims against BLB Worldwide Holdings is entitled to vote to accept or reject the Plan.

(c)      Distributions.  Each Holder of an Allowed First Lien Facility Guarantee Claim and/or Allowed Swap Agreements Guarantee Claim against BLB Worldwide Holdings shall receive on the Distribution Date its Pro Rata share of (i) the New Common Stock or Newco Common Stock (if created) and (ii) the New Senior Secured Credit Facility, which consideration shall be distributed as set forth in Class B-1.

To clarify, Holders of First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims are only receiving distributions under the Plan for their First Lien Facility Claims and Swap Agreements Claims.

2.      **Class A-2:  Second Lien Facility Guarantee Claims against BLB Worldwide Holdings**

(a)      Classification.  Class A-2 consists of all Second Lien Facility Guarantee Claims against BLB Worldwide Holdings.

(b)      Impairment and Voting.  Class A-2 is Impaired by the Plan.  Each Holder of an Allowed Second Lien Facility Guarantee Claim against BLB Worldwide Holdings is entitled to vote to accept or reject the Plan.

(c)      Distributions.  Each Holder of an Allowed Second Lien Facility Guarantee Claim against BLB Worldwide Holdings shall receive on the Distribution Date its Pro Rata share of the Second Lien Facility Claim Contingent Value Right, which consideration shall be distributed as set forth in Class B-2.

To clarify, Holders of Second Lien Facility Guarantee Claims are only receiving distributions under the Plan for their Second Lien Facility Claims.

3.      **Class A-3:  Priority Non-Tax Claims**

(a)      Classification.  Class A-3 consists of all Priority Non-Tax Claims that may exist against BLB Worldwide Holdings.

(b)      Impairment and Voting.  Class A-3 is Unimpaired by the Plan.  Each Holder of an Allowed Priority Non-Tax Claim against BLB Worldwide Holdings is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)      Distributions.  Each Holder of an Allowed Priority Non-Tax Claim against BLB Worldwide Holdings shall be paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

4.      **Class A-4: Secured Claims**

(a)      <u>Classification</u>.  Class A-4 consists of all Secured Claims that may exist against BLB Worldwide Holdings.

(b)      <u>Impairment and Voting</u>.  Class A-4 is Unimpaired by the Plan.  Each Holder of an Allowed Secured Claim against BLB Worldwide Holdings is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)      <u>Distributions</u>.  Except to the extent that a Holder of an Allowed Secured Claim against BLB Worldwide Holdings and the Debtors agree to less favorable treatment to such Holder, on the Distribution Date or as soon thereafter as is reasonably practicable, each Allowed Secured Claim against BLB Worldwide Holdings shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.

5.      **Class A-5: General Unsecured Claims and Rejection Damages Claims**

(a)      <u>Classification</u>.  Class A-5 consists of all General Unsecured Claims and/or Rejection Damages Claims that may exist against BLB Worldwide Holdings.

(b)      <u>Impairment and Voting</u>.  Class A-5 is Impaired by the Plan.  Each Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Worldwide Holdings is entitled to vote to accept or reject the Plan.

(c)      <u>Distributions</u>.  Except to the extent that a Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Worldwide Holdings and the Debtors agree to less favorable treatment to such Holder, each Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Worldwide Holdings shall be paid an amount equal to 65% of its Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim in Cash on the Distribution Date or as soon thereafter as is practicable.

6.      **Class A-6: Intercompany Claims**

(a)      <u>Classification</u>.  Class A-6 consists of all Intercompany Claims that may exist against BLB Worldwide Holdings.

(b)      <u>Impairment and Voting</u>.  Class A-6 is Unimpaired by the Plan.  Each Holder of an Allowed Intercompany Claim against BLB Worldwide Holdings is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)      <u>Distributions</u>.  At the Debtors' or Reorganized Debtors' option, and except as otherwise provided in the Plan, Allowed Intercompany Claims against BLB Worldwide Holdings shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code or receive no distribution on account of such Claims.

7.      **Class A-7: Interests**

(a)      <u>Classification</u>.  Class A-7 consists of all Interests in BLB Worldwide Holdings.

(b)      <u>Impairment and Voting</u>.  Class A-7 is Impaired by the Plan.  Each Holder of an Interest in BLB Worldwide Holdings is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c)    Distributions.  Interests in BLB Worldwide Holdings shall be cancelled, released, and extinguished and the Holders of such Interests shall receive no distribution under the Plan on account thereof.

B.    BLB Management Services

1.    **Class B-1:    First Lien Facility Claims and Swap Agreements Claims against BLB Management Services**

(a)    Classification.  Class B-1 consists of all First Lien Facility Claims and Swap Agreements Claims against BLB Management Services.

(b)    Impairment and Voting.  Class B-1 is Impaired by the Plan.  Each Holder of an Allowed First Lien Facility Claim and/or Allowed Swap Agreements Claims against BLB Management Services is entitled to vote to accept or reject the Plan.

(c)    Distributions.  Each Holder of an Allowed First Lien Facility Claim and/or Allowed Swap Agreements Claims against BLB Management Services shall receive on the Distribution Date its Pro Rata share of (i) the New Common Stock or Newco Common Stock (if created) and (ii) the New Senior Secured Credit Facility.

2.    **Class B-2:  Second Lien Facility Claims against BLB Management Services**

(a)    Classification.   Class B-2 consists of all Second Lien Facility Claims against BLB Management Services.

(b)    Impairment and Voting.  Class B-2 is Impaired by the Plan.  Each Holder of an Allowed Second Lien Facility Claim against BLB Management Services is entitled to vote to accept or reject the Plan.

(c)    Distributions.  Each Holder of an Allowed Second Lien Facility Claim against BLB Management Services shall receive on the Distribution Date its Pro Rata share of the Second Lien Facility Claim Contingent Value Right.

Pursuant to the Intercreditor Agreement, the Second Lien Lenders are entitled to recover on account of their Second Lien Facility Claims only after the First Lien Lenders have received full satisfaction of all obligations due and owing to them under the First Lien Facility.  The distributions to the First Lien Lenders from Class B-1 do not fully satisfy all obligations due and owing to the First Lien Lenders under the First Lien Facility.  Notwithstanding the foregoing, the First Lien Lenders have agreed to waive their rights under the Intercreditor Agreement with respect to the distribution of the Second Lien Facility Claim Contingent Value Right to Holders of Second Lien Facility Claims.

3.    **Class B-3:  Priority Non-Tax Claims**

(a)    Classification.  Class B-3 consists of all Priority Non-Tax Claims that may exist against BLB Management Services.

(b)    Impairment and Voting.  Class B-3 is Unimpaired by the Plan.  Each Holder of an Allowed Priority Non-Tax Claim against BLB Management Services is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)    Distributions.  Each Holder of an Allowed Priority Non-Tax Claim against BLB Management Services shall be paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

4.       **Class B-4:  Secured Claims**

(a)       <u>Classification</u>.  Class B-4 consists of all Secured Claims that may exist against BLB Management Services.

(b)       <u>Impairment and Voting</u>.  Class B-4 is Unimpaired by the Plan.  Each Holder of an Allowed Secured Claim against BLB Management Services is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)       <u>Distributions</u>.  Except to the extent that a Holder of an Allowed Secured Claim against BLB Management Services and the Debtors agree to less favorable treatment to such Holder, on the Distribution Date or as soon thereafter as is reasonably practicable, each Allowed Secured Claim against BLB Management Services shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.

5.       **Class B-5:  General Unsecured Claims and Rejection Damages Claims**

(a)       <u>Classification</u>.  Class B-5 consists of all General Unsecured Claims and/or Rejection Damages Claims that may exist against BLB Management Services.

(b)       <u>Impairment and Voting</u>.  Class B-5 is Impaired by the Plan.  Each Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Management Services is entitled to vote to accept or reject the Plan.

(c)       <u>Distributions</u>.  Except to the extent that a Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Management Services and the Debtors agree to less favorable treatment to such Holder, each Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Management Services shall be paid an amount equal to 65% of their Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim in Cash on the Distribution Date or as soon thereafter as is practicable.

6.       **Class B-6:  Intercompany Claims**

(a)       <u>Classification</u>.  Class B-6 consists of all Intercompany Claims that may exist against BLB Management Services.

(b)       <u>Impairment and Voting</u>.  Class B-6 is Unimpaired by the Plan.  Each Holder of an Allowed Intercompany Claim against BLB Management Services is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)       <u>Distributions</u>.  At the Debtors' or Reorganized Debtors' option, and except as otherwise provided in the Plan, Allowed Intercompany Claims against BLB Management Services shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code or receive no distribution on account of such Claims.

7.       **Class B-7:  Intercompany Interests**

(a)       <u>Classification</u>.  Class B-7 consists of all Intercompany Interests in BLB Management Services.

(b)       <u>Impairment and Voting</u>.  Class B-7 is Unimpaired by the Plan.  Each Holder of an Intercompany Interest in BLB Management Services is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)  Distributions.  Intercompany Interests in BLB Management Services shall be reinstated in exchange for the Reorganized Debtors' agreement to make certain distributions to the Holders of Allowed General Unsecured Claims and Rejection Damages Claims against BLB Management Services, to provide management services to certain other Reorganized Debtors, and to use certain funds and assets, to the extent authorized in the Plan, to satisfy certain obligations between and among such Reorganized Debtors.

C.  UTGR

1.  **Class C-1:  First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against UTGR**

(a)  Classification.  Class C-1 consists of all First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against UTGR.

(b)  Impairment and Voting.  Class C-1 is Impaired by the Plan.  Each Holder of an Allowed First Lien Facility Guarantee Claim and/or Allowed Swap Agreements Guarantee Claim against UTGR is entitled to vote to accept or reject the Plan.

(c)  Distributions.  Each Holder of an Allowed First Lien Facility Guarantee Claim and/or Allowed Swap Agreements Guarantee Claim against UTGR shall receive on the Distribution Date its Pro Rata share of (i) the New Common Stock or Newco Common Stock (if created) and (ii) the New Senior Secured Credit Facility, which consideration shall be distributed as set forth in Class B-1.

To clarify, Holders of First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims are only receiving distributions under the Plan for their First Lien Facility Claims and Swap Agreements Claims.

2.  **Class C-2:  Second Lien Facility Guarantee Claims against UTGR**

(a)  Classification.  Class C-2 consists of all Second Lien Facility Guarantee Claims against UTGR.

(b)  Impairment and Voting.  Class C-2 is Impaired by the Plan.  Each Holder of an Allowed Second Lien Facility Guarantee Claim against UTGR is entitled to vote to accept or reject the Plan.

(c)  Distributions.  Each Holder of an Allowed Second Lien Facility Guarantee Claim against UTGR shall receive on the Distribution Date its Pro Rata share of the Second Lien Facility Claim Contingent Value Right, which consideration shall be distributed as set forth in Class B-2.

To clarify, Holders of Second Lien Facility Guarantee Claims are only receiving distributions under the Plan for their Second Lien Facility Claims.

3.  **Class C-3:  Priority Non-Tax Claims**

(a)  Classification.  Class C-3 consists of all Priority Non-Tax Claims that may exist against UTGR.

(b)  Impairment and Voting.  Class C-3 is Unimpaired by the Plan.  Each Holder of an Allowed Priority Non-Tax Claim against UTGR is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)  Distributions.  Each Holder of an Allowed Priority Non-Tax Claim against UTGR shall be paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

20

4.     **Class C-4:  Secured Claims**

(a)     <u>Classification</u>.  Class C-4 consists of all Secured Claims that may exist against UTGR.

(b)     <u>Impairment and Voting</u>.  Class C-4 is Unimpaired by the Plan.  Each Holder of an Allowed Secured Claim against UTGR is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)     <u>Distributions</u>.  Except to the extent that a Holder of an Allowed Secured Claim against UTGR and the Debtors agree to less favorable treatment to such Holder, on the Distribution Date or as soon thereafter as is reasonably practicable, each Allowed Secured Claim against UTGR shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.

5.     **Class C-5:  General Unsecured Claims, the RIGOA Claim, the Dimeo Claim, and Rejection Damages Claims**

(a)     <u>Classification</u>.  Class C-5 consists of all General Unsecured Claims, the RIGOA Claim, the Dimeo Claim, and/or Rejection Damages Claims that may exist against UTGR (each, a "<u>Class C-5 Claim</u>").

(b)     <u>Impairment and Voting</u>.  Class C-5 is Impaired by the Plan.  Each Holder of an Allowed Class C-5 Claim against UTGR is entitled to vote to accept or reject the Plan.

(c)     <u>Distributions</u>.  Except to the extent that a Holder of an Allowed Class C-5 Claim against UTGR and the Debtors agree to less favorable treatment to such Holder, each Holder of an Allowed Class C-5 Claim against UTGR shall be paid an amount equal to 65% of its Allowed Class C-5 Claim in Cash on the Distribution Date or as soon thereafter as is practicable.

(d)     <u>Convenience Claim Election Rights</u>.  Each Holder of an Allowed Class C-5 Claim may elect to be treated as a Holder of a Convenience Claim in Class C-6 by electing to reduce its Class C-5 Claim to the amount of $2,500 in full and final satisfaction, release, and discharge of such Allowed Class C-5 Claim.  Any election must be made on the Ballot, and except as may be agreed to by the Debtors or the Reorganized Debtors, no Holder of a Class C-5 Claim can elect the treatment as a Convenience Claim after the Voting Deadline.  Upon any such valid election, the Class C-5 Claim of such Holder shall be automatically reduced to $2,500 and shall no longer be entitled to any other distribution as contemplated by this Plan.

6.     **Class C-6:  Convenience Claims**

(a)     <u>Classification</u>.  Class C-6 consists of all Convenience Claims that may exist against UTGR.

(b)     <u>Impairment and Voting</u>.  Class C-6 is Impaired by the Plan.  Each Holder of a Convenience Claim against UTGR is entitled to vote to accept or reject the Plan.

(c)     <u>Distributions</u>.  Each Holder of a Convenience Claim against UTGR shall be paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

7.     **Class C-7:  Intercompany Claims**

(a)     <u>Classification</u>.  Class C-7 consists of all Intercompany Claims that may exist against UTGR.

(b)      <u>Impairment and Voting</u>.  Class C-7 is Unimpaired by the Plan.  Each Holder of an Allowed Intercompany Claim against UTGR is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)      <u>Distributions</u>.  At the Debtors' or Reorganized Debtors' option, and except as otherwise provided in the Plan, Allowed Intercompany Claims against UTGR shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code or receive no distribution on account of such Claims.

8.      **Class C-8:  Intercompany Interests**

(a)      <u>Classification</u>.  Class C-8 consists of all Intercompany Interests in UTGR.

(b)      <u>Impairment and Voting</u>.  Class C-8 is Unimpaired by the Plan.  Each Holder of an Intercompany Interest in UTGR is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)      <u>Distributions</u>.  Intercompany Interests in UTGR shall be reinstated in exchange for the Reorganized Debtors' agreement to make certain distributions to the Holders of Allowed General Unsecured Claims and Rejection Damages Claims against UTGR, to provide management services to certain other Reorganized Debtors, and to use certain funds and assets, to the extent authorized in the Plan, to satisfy certain obligations between and among such Reorganized Debtors.

## ARTICLE V.

## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS;
## ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION

A.        Classes Entitled to Vote.  The following Classes are Impaired by the Plan and thus are entitled to vote to accept or reject the Plan.

**Class A-1** (First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against BLB Worldwide Holdings)

**Class A-2** (Second Lien Facility Guarantee Claims against BLB Worldwide Holdings)

**Class A-5** (General Unsecured Claims and Rejection Damages Claims against BLB Worldwide Holdings)

**Class B-1** (First Lien Facility Claims and Swap Agreements Claims against BLB Management Services)

**Class B-2** (Second Lien Facility Claims against BLB Management Services)

**Class B-5** (General Unsecured Claims and Rejection Damages Claims against BLB Management Services)

**Class C-1** (First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against UTGR)

**Class C-2** (Second Lien Facility Guarantee Claims against UTGR)

**Class C-5** (General Unsecured Claims, the RIGOA Claim, the Dimeo Claim, and Rejection Damages Claims against UTGR)

**Class C-6** (Convenience Claims against UTGR)

B.        Classes Not Entitled to Vote; Deemed to Accept.  The following Classes are Unimpaired by the Plan—and thus not entitled to vote to accept or reject the Plan—and shall be deemed conclusively to have accepted the Plan.

**Class A-3** (Priority Non-Tax Claims against BLB Worldwide Holdings)

**Class A-4** (Secured Claims against BLB Worldwide Holdings)

**Class A-6** (Intercompany Claims against BLB Worldwide Holdings)

**Class B-3** (Priority Non-Tax Claims against BLB Management Services)

**Class B-4** (Secured Claims against BLB Management Services)

**Class B-6** (Intercompany Claims against BLB Management Services)

**Class B-7** (Intercompany Interests in BLB Management Services)

**Class C-3** (Priority Non-Tax Claims against UTGR)

**Class C-4** (Secured Claims against UTGR)

**Class C-7** (Intercompany Claims against UTGR)

**Class C-8** (Intercompany Interests in UTGR)

C.        Classes Not Entitled to Vote; Deemed to Reject.  The following Classes are Impaired by the Plan—but not entitled to vote to accept or reject the Plan—and shall be deemed conclusively to have rejected the Plan.

**Class A-7** (Interests in BLB Worldwide Holdings)

D.        Nonconsensual Confirmation.  Except as otherwise specifically provided in the Plan, if any Impaired Class shall not accept the Plan by the requisite statutory majority provided in sections 1126(c) or (d) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both.

## ARTICLE VI.

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A.    Sources of Consideration for Plan Distributions.  Cash Distributions under the Plan shall be funded from the Reorganized Debtors' Cash balances and/or Cash from business operations.  Further, the Debtors and the Reorganized Debtors shall be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

B.    Reorganized Debtors' Equity Interests.  The Reorganized Debtors' equity interests shall consist of New Common Stock and reinstated Intercompany Interests.  On the Effective Date, shares of New Common Stock shall be issued and distributed to the Holders of the First Lien Facility Claims without the need for any further corporate action or without any further action by a Holder of Claims or Interests.  All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable.  Each distribution and issuance of New Common Stock shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

C.    First Lien Agent and Second Lien Agent.  The First Lien Agent and Second Lien Agent, respectively, shall be deemed to be the holder of all First Lien Facility Claims or Second Lien Facility Claims for purposes of any distributions to be made hereunder, and all distributions on account of such Claims shall be made to or on behalf of the First Lien Agent and Second Lien Agent, as applicable.  The First Lien Agent shall hold or direct such distributions for the benefit of the holders of Allowed First Lien Facility Claims, while the Second Lien Agent shall hold or direct such distribution for the benefit of the holders of Allowed Second Lien Facility Claims.  The First Lien Agent and Second Lien Agent shall arrange to deliver such distributions to or on behalf of their respective claimants.

D.    New Senior Secured Credit Facility.  On the Effective Date, the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to obtain the New Senior Secured Credit Facility, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any person.

E.    Second Lien Facility Claim Contingent Value Right.  For a period of seven (7) years following the Effective Date, the Holders of Second Lien Facility Claims, in the event of a sale or recapitalization of the Reorganized Debtors (such event, a "Transaction"), shall be entitled to (i) 50% of the amount of Transaction proceeds between $475,000,000 and $575,000,000, and (ii) 75% of the amount of Transaction proceeds exceeding $575,000,000.  Each holder of Second Lien Facility Claim Contingent Value Rights, by receiving such rights, shall automatically be deemed to consent and agree with the Reorganized Debtors and with each other holder of Second Lien Facility Claim Contingent Value Rights that (i) the Reorganized Debtors shall maintain a register identifying each holder of Second Lien Facility Claim Contingent Value Rights and the amount of the Second Lien Facility Claim Contingent Value Rights held by such holder; (ii) the Second Lien Facility Claim Contingent Value Rights may be transferred or assigned by a holder thereof only upon the provision of prior notice by such holder to the Reorganized Debtors and pursuant to a form of assumption and assignment agreement reasonably acceptable to the Reorganized Debtors; provided, however, that any fee, cost, tax, assessment, expense or other charge assessed, levied or imposed by any Governmental Unit or agency or division thereof upon the sale, transfer, assignment or other disposition of Second Lien Facility Claim Contingent Value Rights shall not be borne by the Reorganized Debtors and shall be the sole responsibility of the transferor of such Second Lien Facility Claim Contingent Value Rights; (iii) the Second Lien Facility Claim Contingent Value Rights are subject to the terms, provisions and conditions of the Plan, including this Article VI.E; (iv) the Second Lien Facility Claim Contingent Value Rights do not bear any stated rate of interest; and (v) Second Lien Facility Claim Contingent Value Rights shall not entitle holders thereof to vote, receive dividends or be deemed for any purpose the holder of any securities of the Reorganized Debtors in connection with holdings of Second Lien Facility Claim Contingent Value Rights, nor shall Second Lien Facility Claim Contingent Value Rights confer or be construed to confer any of the rights of a stockholder of the Reorganized Debtors or any right to vote for the election of directors or upon any matter

24

submitted to stockholders at any meeting thereof, or to give or withhold consent to any corporate action, or to receive notice of meetings or other actions affecting stockholders.  The Second Lien Facility Claim Contingent Value Rights represent the right to receive contingent distributions of value under the Plan as provided in this Article VI.E.  Distributions on account of the Second Lien Facility Claim Contingent Value Rights will be made only to the extent required by this Article VI.E and, if no such distributions are required to be made hereunder prior to the expiration of the Second Lien Facility Claim Contingent Value Rights, the Second Lien Facility Claim Contingent Value Rights will terminate and cease to exist and holders thereof will receive no value on account of the Second Lien Facility Claim Contingent Value Rights.

F.      Treatment of the Dimeo Claim.  Confirmation of the Plan shall constitute the Bankruptcy Court's finding that, pursuant to section 506(a)(1) of the Bankruptcy Code, because the aggregate value of Dimeo's interest (including the collective interests of the construction subcontractors that are parties to the Amended Consent Order) in the Project Property is less than the aggregate value of the Dimeo Claim, the full extent of the Dimeo Claim is unsecured.

G.      Corporate Existence.  Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval.

H.      Vesting of Assets in the Reorganized Debtors.  Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, and all Causes of Action shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens, if any, granted to secure any indebtedness that is Unimpaired by the Plan).  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

I.      Cancellation of Securities and Agreements.  On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under the First Lien Credit Facility and Second Lien Credit Facility and any other Certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors.

J.      Discharge of Debtors.  Except as otherwise provided in the Plan, on the Effective Date and effective as of the Effective Date:  (1) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, or any of their assets, property or Estates; (2) the Plan shall bind all Holders of Claims and Interests, notwithstanding

whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims against and Interests in the Debtors shall be satisfied, discharged and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (4) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.  All debt under the Plan that shall be surrendered, redeemed, exchanged or cancelled shall be deemed for all purposes, including income tax purposes, to be outstanding until the Effective Date, and such debt shall not be deemed surrendered, redeemed, exchanged or cancelled on any date earlier than the Effective Date.

K.      Restructuring Transactions.  On and after the Effective Date, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, conversion, merger or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that the Reorganized Debtors determine are necessary or appropriate.

L.      Alternative Structure.  With the consent of the Debtors, the Holders of the First Lien Facility Claims may (i) take the steps necessary on or before the Effective Date so that Newco shall be duly organized and come into existence as a valid and legally existing entity and (ii) transfer the First Lien Facility Claims to Newco in exchange for the stock of Newco and the right to receive the New First Lien Credit Facility.  If the parties opt to utilize this alternative structure, the specific formation documents with respect to Newco will be set forth in the Plan Supplement.  In the event that Newco acquires the First Lien Facility Claims on or before the Effective Date, Newco shall exchange such Claims for consideration to be more fully described in the Plan Supplement.

M.      Exemption from Certain Transfer Taxes and Recording Fees.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

N.      Board Representation.  The Amended and Restated Certificates of Incorporation and the Amended and Restated Bylaws shall provide that the Board of Directors shall be comprised of three directors.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of any Person proposed to serve on the initial board of directors or be an officer of each of the Reorganized Debtors.  To the extent any such director or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the nature and amount of any compensation to be paid to such director or officer will also be disclosed.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the Amended and Restated Certificates of Incorporation, Amended and Restated Bylaws, and other constituent documents of the Reorganized Debtors.

O.      Senior Management.  The President and General Counsel of the Reorganized Debtors shall be the same as the President and General Counsel on the date hereof, and shall be employed pursuant to the Employment Agreements attached as Exhibit 3 to the Plan Supplement, which shall be adopted by the Reorganized Debtors and effective upon the Effective Date.

P.      Management Incentive Plan.  The Reorganized Debtors shall be authorized to make payments pursuant to the Management Incentive Plan on the Effective Date.

Q.      Stock Option Program.  The Board of Directors may reserve a portion of New Common Stock or Newco Common Stock (if created) for a stock option program to be administered by the Board of Directors.  Should the Board of Directors seek to implement this program, it will serve as a form of discretionary incentive-based compensation for the employees, officers and directors of the Reorganized Debtors.

R.      Employee and Retiree Benefits.  Except with respect to any rejected employment agreements, on and after the Effective Date, the Reorganized Debtors may: (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs, and plans for, among other things, compensation (including equity based and bonus compensation), health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity at any time; and (2) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date; provided, however, that the Debtors' or Reorganized Debtors' performance of any employment agreement that is not a rejected employment agreement will not entitle any Person to any benefit or alleged entitlement under any policy, program or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such benefit or alleged entitlement under any such policy, program, or plan.  Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

S.      Creation of Holdback Escrow Account.  On the Effective Date, the Reorganized Debtors shall establish the Holdback Escrow Account and reserve an amount necessary to pay all of the Accrued Professional Compensation.

T.      Preservation of Rights of Action.  Subject to the releases set forth in Article X.C and Article X.D below, and in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

        Further, subject to the releases set forth in Article X.C and Article X.D below, the Reorganized Debtors reserve and shall retain the foregoing Causes of Action notwithstanding the rejection or repudiation of any Executory Contract during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, as the case may be.  The applicable Reorganized Debtor, through its authorized agents or representatives,

27

shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, File, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

## ARTICLE VII.

### TREATMENT OF EXECUTORY CONTRACTS

A.      <u>Assumption and Rejection of Executory Contracts</u>.  Each of the Debtors' Executory Contracts shall be deemed assumed as of the Effective Date, other than those Executory Contracts that are (1) identified on the Rejected Executory Contract List, (2) the subject of a notice of rejection of Executory Contract or motion to reject Executory Contract that is pending on the Confirmation Date, or (3) subject to a notice of rejection of Executory Contract or motion to reject Executory Contract pursuant to which the requested effective date of such rejection is after the Effective Date.  Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, all assumptions or rejections of such Executory Contracts in the Plan are effective as of the Effective Date.  Each such Executory Contract assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party prior to the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order.

B.      <u>Indemnification Obligations</u>.  Notwithstanding anything to the contrary herein, the obligations of the Debtors as provided in the Debtors' respective certificates of incorporation, bylaws, applicable law or other applicable agreements as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of directors or officers who were directors or officers of such Debtor at any time prior to the Effective Date, respectively, against any claims or causes of action, whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Plan, remain unaffected thereby after the Effective Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation or limitation is owed in connection with an event occurring before or after the Petition Date but no later than the Effective Date.  Any Claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

As of the Effective Date, each Debtor's bylaws shall provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, directors and officers who were directors or officers of such Debtor, at any time prior to the Effective Date at least to the same extent as the bylaws of each of the Respective Debtors on the Petition Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors shall amend and/or restate its certificate of incorporation or bylaws before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such directors' or officers' rights.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect on the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

C.      <u>Cure of Defaults for Assumed Executory Contracts</u>.  With respect to each of the Debtors' Executory Contracts to be assumed, the Debtors shall have designated a proposed Cure, and the assumption of such Executory Contract may be conditioned upon the disposition of all issues with respect to Cure.  Any provisions or terms of the Debtors' Executory Contracts to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by Cure or by an agreed-upon waiver of Cure.  Except with respect to Executory Contracts in which the Debtors and the applicable counterparties have stipulated in writing to payment of Cure, all requests for payment of Cure that differ from the amounts proposed by the Debtors must be Filed with the Notice, Claims and Solicitation Agent on or before the Cure Bar Date.  Any request for payment of Cure that is not timely-Filed shall be disallowed automatically and forever barred from assertion and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim for Cure shall be deemed fully satisfied, released, and discharged

upon payment by the applicable Debtor of the amount listed on the Debtors' proposed Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary; provided, however, that nothing shall prevent the applicable Reorganized Debtor from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without further notice to or action, order, or approval of the Bankruptcy Court.

If the Debtors or Reorganized Debtors, as applicable, object to any Cure or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related issues. If there is a dispute regarding such Cure, the ability of the applicable Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the applicable Debtor or Reorganized Debtor, and the counterparty to the Executory Contract. Any counterparty to an Executory Contract that fails to object timely to the proposed assumption of any Executory Contract will be deemed to have consented to such assumption. The Debtors or Reorganized Debtors, as applicable, reserve the right either to reject or nullify the assumption of any Executory Contract no later than thirty (30) days after a Final Order determining the Cure or any request for adequate assurance of future performance required to assume such Executory Contract.

Assumption of any Executory Contract pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time prior to the effective date of assumption. Any Proof of Claim Filed with respect to an Executory Contract that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

D.      Claims Based on Rejection or Repudiation of Executory Contracts.  Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection or repudiation of the Debtors' Executory Contracts pursuant to the Plan or otherwise must be Filed with the Notice, Claims and Solicitation Agent within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Proofs of Claim arising from the rejection or repudiation of the Debtors' Executory Contracts that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Reorganized Debtor without the need for any objection by the Reorganized Debtors or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection or repudiation of the Executory Contract shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with the Plan.

E.      Reservation of Rights.  Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

# ARTICLE VIII.

## PROCEDURES FOR RESOLVING CLAIMS AND DISPUTES

A.      Allowance of Claims and Interests.  After the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

B.      Claims and Interests Administration Responsibilities.  Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority:  (1) to File, withdraw or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

C.      Estimation of Claims and Interests.  Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      Adjustment to Claims and Interests Without Objection.  Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  Beginning on the end of the first full calendar quarter that is at least ninety (90) days after the Effective Date, the Reorganized Debtors shall publish every calendar quarter a list of all Claims or Interests that have been paid, satisfied, amended or superseded during such prior calendar quarter.

E.      Disallowance of Claims or Interests.  Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims and Interests may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all property or sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.  All Claims Filed on account of an Indemnification Obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan without any further notice to or action, order or approval of the Bankruptcy Court.  All Claims Filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit without any further notice to or action, order or approval of the Bankruptcy Court.

F.      Offer of Judgment.  The Reorganized Debtors are authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the Holder of a Claim or Interest must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors are entitled to set off such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

G.     <u>Amendments to Claims</u>.  On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

## ARTICLE IX.

### PROVISIONS GOVERNING DISTRIBUTIONS

A.      <u>Distributions on Account of Claims and Interests Allowed as of the Effective Date</u>.  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date shall be made on the Distribution Date; <u>provided, however</u>, that (1) Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice, and (2) Allowed Priority Tax Claims, unless otherwise agreed, shall be paid in full in Cash on the Distribution Date.

B.      <u>Distributions on Account of Claims and Interests Allowed After the Effective Date</u>.

1.      <u>Payments and Distributions on Disputed Claims</u>.  Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim or Interest; <u>provided, however</u>, that (a) Disputed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date, unless otherwise agreed, shall be paid in full in Cash on the Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

2.      <u>Special Rules for Distributions to Holders of Disputed Claims</u>.  Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties:  (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claims have been Allowed.  In the event there are Disputed Claims requiring adjudication and resolution after the Effective Date, the Reorganized Debtors shall establish a Disputed Claims Reserve in an amount appropriate for potential payment of such Claims.  All distributions made from the Disputed Claims Reserve on account of an Allowed Claim shall be made as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to Holders of Allowed Claims included in the applicable Class.

C.      <u>Delivery of Distributions</u>.

1.      <u>Record Date for Distributions</u>.  On the Effective Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Effective Date.  Notwithstanding the foregoing, if a Claim or Interest, other than one based on a publicly-traded Certificate, is transferred twenty (20) or fewer days before the Effective Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      <u>Distribution Agent</u>.  The Distribution Agent shall make all distributions required under the Plan, except that distributions to Holders of Allowed Claims and Interests governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement.

3.      <u>Delivery of Distributions in General</u>.  Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Interests shall be

made to Holders of record as of the Effective Date by the Distribution Agent or a Servicer, as appropriate: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim or Interest Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim or Interest is Filed or if the Debtors have been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent after the date of any related Proof of Claim or Interest; (d) at the addresses reflected in the Schedules if no Proof of Claim or Interest has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Distributions under the Plan on account of Allowed Claims and Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

4.        Compliance Matters. In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

5.        Undeliverable Distributions. If any distribution to a Holder of an Allowed Claim or Interest is returned to a Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors and shall not be supplemented with any interest, dividends or other accruals of any kind.

6.        Reversion. Any distribution under the Plan that is an Unclaimed Distribution for a period of six (6) months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtors. Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred, notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary. The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Debtors, made pursuant to any indenture or Certificate (but only with respect to the distribution by the Servicer to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned or unclaimed property law.

7.        Manner of Payment Pursuant to the Plan. Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Reorganized Debtors by check or by wire transfer. Checks issued by the Distribution Agent or applicable Servicer on account of Allowed Claims and Interests shall be null and void if not negotiated within ninety (90) days after issuance, but may be requested to be reissued until the distribution revests in the Reorganized Debtors.

8.        Surrender of Cancelled Instruments or Securities. On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim or Interest is governed by an agreement and administered by a Servicer). Such surrendered Certificate shall be cancelled solely with respect to the Debtors, and

34

such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.  Notwithstanding anything to the contrary herein, this paragraph shall not apply to Certificates evidencing Claims that are rendered Unimpaired under the Plan.

D.    Claims Paid or Payable by Third Parties.

      1.    Claims Paid by Third Parties.  The Notice, Claims and Solicitation Agent shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

      2.    Claims Payable by Third Parties.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed-upon satisfaction on the Claims Register by the Notice, Claims and Solicitation Agent without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.    Allocation Between Principal and Accrued Interest.  Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claim (to the extent thereof) and, thereafter, to any interest, if any, accrued through the Effective Date.

## ARTICLE X.

### EFFECT OF PLAN CONFIRMATION

A.       Discharge of Claims and Termination of Interests.   Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Interest based upon such debt, right or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed Cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests, subject to the occurrence of the Effective Date.

B.       Compromise and Settlement of Claims and Controversies.   Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such an Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

**C.       Releases by the Debtors.  On the Effective Date and effective as of the Effective Date, for the good and valuable consideration provided by each of the Debtor Releasees (as defined below), including:  the discharge of debt and cancellation of Equity Interests and all other good and valuable consideration transferred pursuant to the Plan, and the service of the Debtors' present and former officers and directors in facilitating the expeditious implementation of the restructuring contemplated by the Plan, each of the Debtors shall provide a full discharge and release to each Released Party, including each other Debtor, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates and representatives, including the Sponsor Entities and Sponsor Representatives (collectively, the "Debtor Releasees" (and each such Debtor Releasee so released shall be deemed released and discharged by the Debtors)), and their respective properties from any and all Causes of Action, whether known or unknown, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors, including those that any of the Debtors or Reorganized Debtors would have been legally entitled to assert against a Debtor Releasee in its own right (whether individually or collectively) or that any Holder of a Claim or Interest or other Entity would have been legally entitled to assert on behalf of any of the Debtors or in its own right or any of their Estates or against any Released Party, including those in any way related to the Chapter 11 Cases or the Plan to the fullest extent of the law; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release  (i) any Person or Entity (including any Released Party) from any Causes of Action arising out of the willful misconduct or gross negligence of any such Person as determined by a final order entered by a court of competent jurisdiction and (ii) any person or Entity other than a Released Party from any causes of action expressly set**

36

forth in and preserved by the Plan.  Notwithstanding anything in the Plan to the contrary, the Debtors or the Reorganized Debtors will not release any Causes of Action that they may have now or in the future against any non-Released Party.

D.       **Releases by Third Parties.**  On the Effective Date and effective as of the Effective Date, the Holders of Claims and Interests shall be deemed to provide a full discharge and release to the Debtor Releasees and the First Lien Agent (for the purposes of this paragraph, on behalf of itself and the First Lien Lenders) and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors or the First Lien Agent (in its capacity as administrative agent under the First Lien Facility (as defined herein)), including those in any way related to the Chapter 11 Cases, the Plan or the First Lien Facility; **provided**, that the foregoing "**Third Party Release**" shall not operate to waive or release (i) any Person or Entity (including the Debtor Releasees and the First Lien Agent) from any Causes of Action arising out of the willful misconduct or gross negligence of any such Person as determined by a final order entered by a court of competent jurisdiction and (ii) any Person or Entity (other than a Debtor Releasee or the First Lien Agent) from any Causes of Action expressly set forth in and preserved by the Plan, the Plan Supplement or related documents.  Notwithstanding anything in the Plan to the contrary, the Holders of Claims and Interests will not release any Causes of Action that they, the Debtors or the Reorganized Debtors may have now or in the future against the non-Released Parties.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, and further, shall constitute its finding that the Third Party Release is:  (1) in exchange for the good and valuable consideration provided by the Debtor Releasees and the First Lien Agent, a good faith settlement and compromise of the claims released by the Third Party Release; (2) in the best interests of the Debtors and all Holders of Claims; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Holders of Claims and Interests asserting any claim released by the Third Party Release against any of the Debtor Releasees or the First Lien Agent.

Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including any claim arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States Government or any of its agencies or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatsoever, including without limitation any claim, suit or action arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state and local authority against the Released Parties.  This paragraph, however, shall in no way affect or limit the discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code.

E.       **Injunction.**   From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner any Cause of Action released or to be released pursuant to the Plan or the Confirmation Order.

F.       **Exculpation.**  The Exculpated Parties shall neither have nor incur any liability to any Entity for any Prepetition or Postpetition act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Effective Date of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other Prepetition or Postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Company; **provided**, that the foregoing provisions of this exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a final order to have constituted gross negligence or willful misconduct; **provided**, **further**, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan; **provided**

**further, that the foregoing "Exculpation" shall not apply to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, except for acts or omissions of the Releasing Parties.**

G.      Protection Against Discriminatory Treatment.  Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or another Entity with whom such Reorganized Debtors have been associated, solely because one of the Debtors has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      Setoffs and Recoupment.  The Debtors may set off against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim it may have against such claimant.

        In no event shall any Holder of Claims or Interests be entitled to set off any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or Reorganized Debtors unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

        In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

I.      Release of Liens.  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

J.      Reimbursement or Contribution.  If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date: (1) such Claim has been adjudicated as noncontingent or (2) the relevant Holder of a Claim has Filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE XI.

## ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE EXPENSE CLAIMS

A.   <u>Professional Claims</u>.

1.   <u>Final Fee Applications</u>.  All final requests for Professional Compensation and Reimbursement Claims shall be Filed no later than ninety (90) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Compensation and Reimbursement Claims shall be determined by the Bankruptcy Court.

2.   <u>Payment of Interim Amounts</u>.  Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the Professional Fee Order.

3.   <u>Holdback Escrow Account</u>.  On the Effective Date, the Reorganized Debtors shall fund the Holdback Escrow Account with Cash equal to the aggregate Holdback Amount for all Professionals.  The Holdback Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the Professional Fee Order.  Such funds shall not be considered property of the Reorganized Debtors.   The remaining amount of Professional Compensation and Reimbursement Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Holdback Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by a Bankruptcy Court order.  When all Claims by Professional have been paid in full, amounts remaining in the Holdback Escrow Account, if any, shall be paid to the Reorganized Debtors.

4.   <u>Holdback Amount</u>.  To receive payment for unbilled fees and expenses incurred through the Effective Date, on or before the Effective Date, the Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors.  If a Professional does not provide an estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Professional; <u>provided</u>, <u>however</u>, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional.  The total amount so estimated as of the Effective Date shall comprise the Holdback Amount.

5.   <u>Post-Effective Date Fees and Expenses</u>.  Except as otherwise specifically provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, Professional or other fees and expenses incurred by that Reorganized Debtor after the Effective Date pursuant to the Plan.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

6.   <u>Substantial Contribution Compensation and Expenses</u>.  Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules.

7.   <u>Administrative Agent Obligations</u>.  Unless otherwise ordered by the Bankruptcy Court or specifically provided for in the Plan, all reasonable fees and expenses of the First Lien Agent and the Second Lien Agent (and their counsel, agents, and advisors) that are provided for under the respective credit agreements and related documents or agreements, including any unpaid administrative agency fees, shall be paid in full in Cash without a reduction to the recoveries of applicable Holders of Allowed Claims on the Effective Date.

B.        Other Administrative Expense Claims.  All requests for payment of an Administrative Expense Claim must be Filed with the Notice, Claims and Solicitation Agent, and served upon counsel to the Debtors or Reorganized Debtors, as applicable, on or before the Administrative Expense Claims Bar Date.  The Reorganized Debtors may settle and pay any Administrative Expense Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.   In the event that any party with standing objects to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be Filed with respect to an Administrative Expense Claim previously Allowed by Final Order.

## ARTICLE XII.

### CONDITIONS PRECEDENT TO EFFECTIVE DATE

A.      <u>Conditions Precedent to Effective Date</u>.  The following shall be satisfied or waived as conditions precedent to the Effective Date.

1.      The Bankruptcy Court shall have approved the Disclosure Statement, in a manner acceptable to the Debtors, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      The final version of the Plan, the Plan Supplement and all of the documents and exhibits contained therein shall have been Filed and approved in form and substance reasonably acceptable to the Debtors and the First Lien Agent.

3.      The Bankruptcy Court shall enter the Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the First Lien Agent, and such order shall not have been stayed or modified or vacated on appeal.

4.      All governmental, regulatory, and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated herein shall have been obtained and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions, including, without limitation, all required approvals, consents, and licenses issuable by the State of Rhode Island Department of Business Regulation and the State of Rhode Island Division of Lotteries pursuant to applicable Rhode Island law.

5.      The legislative measures set forth in Section III.A of the Restructuring Agreement shall have become legally operative.

B.      <u>Waiver of Conditions Precedent</u>.  The Debtors or the Reorganized Debtors, as applicable, and subject to the consent of the First Lien Agent, which consent shall not be unreasonably withheld, may waive any of the conditions to the Effective Date set forth above at any time without any notice to parties in interest and without any further notice to or action, order or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm the Plan.  The failure of the Debtors or Reorganized Debtors, as applicable, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

C.      <u>Effect of Non-Occurrence of Conditions to the Effective Date</u>.  Each of the conditions to the Effective Date must be satisfied or duly waived (subject to the consent of the First Lien Agent, which consent shall not be unreasonably withheld), and the Effective Date must occur within 180 days after Confirmation, or by such later date established by Bankruptcy Court order.  If the Effective Date has not occurred within 180 days of Confirmation, then upon motion by a party-in-interest made before the Effective Date and a hearing, the Confirmation Order may be vacated by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that notwithstanding the filing of such motion to vacate, the Confirmation Order may not be vacated if the Effective Date occurs before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, including the discharge of Claims and termination of Interests pursuant to the Plan and section 1141 of the Bankruptcy Code and the assumptions, assignments or rejections of Executory Contracts, and nothing contained in the Plan or Disclosure Statement shall:  (1) constitute a waiver or release of any Claims, Interests or Causes of Action; (2) prejudice in any manner the rights of any Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XIII.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      Modification or Amendments.  Except as otherwise specifically provided in the Plan, and subject to the Restructuring Agreements and conditions to the Effective Date, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code; provided, that any such amendments or modifications shall be subject to the consent of the First Lien Agent, which consent shall not be unreasonably withheld.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw or to alter, amend or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan, subject to the terms of the Restructuring Agreement and the conditions to the Effective Date. Upon its filing, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the electronic docket for the Chapter 11 Cases maintained on the Bankruptcy Court's website at ecf.rib.uscourts.gov, and at the Debtors' website at www.donlinrecano.com/twinriver.  The documents contained in the Plan Supplement are an integral part of the Plan and shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

B.      Effect of Confirmation on Modifications.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      Revocation or Withdrawal of Plan.  Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization provided that First Lien Agent provides its consent, which consent shall not be unreasonably withheld.   If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XIV.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. Adjudicate, decide or resolve any and all matters related to Causes of Action;

7. Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code

8. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10. Resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan, unless as otherwise provided in such agreement or agreed to by the parties thereto;

11. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

12. Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

43

14.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

15.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement; unless as otherwise provided in such contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement or agreed to by the parties thereto;

16.     Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

17.     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan, unless as otherwise provided in such agreement, document or instrument executed in connection with the Plan or agreed to by the parties thereto;

21.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, unless as otherwise provided in such agreement executed in connection with the Plan or agreed to by the parties thereto;

23.     Enforce all orders previously entered by the Bankruptcy Court; and

24.     Hear any other matter not inconsistent with the Bankruptcy Code.

Provided, however, that the Bankruptcy Court shall not retain jurisdiction for local, real property and tangible property tax appeals by UTGR, including real property appeals relating to assessed value as of December 31, 2006 and December 31, 2007 pending in Rhode Island Superior Court (CA No. 08-2614), real property appeal relating to assessed value as of December 31, 2008 pending with the Town of Lincoln, tangible property appeal relating to assessed value as of December 31, 2007 pending in Rhode Island Superior Court (CA No. 09-0313), and tangible property appeal relating to assessed value as of December 31, 2008 pending with the Town of Lincoln.

## ARTICLE XV.

## MISCELLANEOUS PROVISIONS

A.        <u>Immediate Binding Effect</u>.  Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts with the Debtors.

B.        <u>Additional Documents</u>.  On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.        <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

D.        <u>Dissolution of the Creditors' Committee</u>.  On the Effective Date, the Creditors' Committee shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

E.        <u>Reservation of Rights</u>.  Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.        <u>Successors and Assigns</u>.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

G.        <u>Service of Documents</u>.  After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| Debtors | Counsel to the Debtors |
|---|---|
| UTGR, Inc.<br>100 Twin River Road<br>Lincoln, Rhode Island 02865<br>Attn:    Craig Eaton, Esq. | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:    Paul M. Basta, Esq.<br>          Stephen E. Hessler, Esq.<br><br>-and-<br><br>Winograd, Shine & Zacks, P.C.<br>123 Dyer Street<br>Providence, Rhode Island 02903<br>Attn:    Allan M. Shine, Esq.<br>          Diane Finkle, Esq. |
| **United States Trustee** | **Counsel to the Creditors' Committee** |
| 10 Dorrance Street, Room 910<br>Providence, Rhode Island 02903<br>Attn:    Gary L. Donahue, Esq.<br>          Sandra Nicholls, Esq. | Jager Smith P.C.<br>One Financial Center<br>Boston, Massachusetts 02111<br>Attn:    Bruce F. Smith, Esq.<br>          Steven C. Reingold, Esq. |
| **Counsel to the Department of Revenue and Department of Business Regulation of the Rhode Island Department of Administration** | **Counsel to the First Lien Agent** |
| Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Attn:    Shelley C. Chapman, Esq.<br>          Matthew Feldman, Esq.<br>          Adam M. Turteltaub, Esq. | Cadwalader, Wickersham & Taft LLP<br>One World Financial Center<br>New York, New York 10281<br>Attn:    George A. Davis, Esq.<br>          Scott J. Greenberg, Esq. |

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      Term of Injunctions or Stays.  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      Entire Agreement.  On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such

agreement shall control), and corporate governance matters; provided, however, that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation of the applicable Debtor or Reorganized Debtor, as applicable.

K.      Exhibits.  All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall have been available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' website at www.donlinrecano.com/twinriver or on the electronic docket maintained on the Bankruptcy Court's website at ecf.rib.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

L.      Closing of Chapter 11 Cases.  The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.      Waiver or Estoppel.  Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

N.      Conflicts.  Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

UTGR, INC.,
(on behalf of itself and all of the other Debtors)

By: _/s/ *George Papanier*_____
      George Papanier
Its:    President and Chief Operating Officer

Prepared by:

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
(212) 446-4800 (telephone)
_/s/ *Paul M. Basta*_____
Paul M. Basta
Stephen E. Hessler

WINOGRAD, SHINE & ZACKS, P.C.
123 Dyer Street
Providence, Rhode Island  02903
(401) 273-8300 (telephone)

Counsel to the Debtors and Debtors in Possession