**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| UTGR, INC. d/b/a TWIN RIVER, <u>et al.</u>,[1] | ) | Case No. 09-12418 (ANV) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF MOTION OF REORGANIZED DEBTORS FOR**
**ORDER GRANTING FINAL DECREE CLOSING CHAPTER 11 CASES**

**PLEASE TAKE NOTICE** that the above-captioned debtors, as debtors and debtors in possession (collectively, the "<u>Reorganized Debtors</u>"), file this Motion of Reorganized Debtors for an Order Granting Final Decree Closing the Chapter 11 Cases (the "<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 9013-2(a)(2) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Rhode Island (the "<u>Local Bankruptcy Rules</u>"), the Reorganized Debtors request the Court consider this Motion without a hearing.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Motion must comply with the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Local Bankruptcy Rules and must be set forth in a writing describing the basis therefore. Additionally, all objections to the Motion must be (a) filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system, (b) delivered in hard copy form in an unsealed envelope to the chambers of the Honorable Judge Arthur N. Votolato, United States Bankruptcy Court, 380 Westminster Street, Providence, Rhode Island 02903 and marked "Chambers Copy," not later than the next business day following the date on which the objection

---

[1]  The Reorganized Debtors in these chapter 11 cases are BLB Management Services, Inc., BLB Worldwide Holdings, Inc., and UTGR, Inc.

is electronically filed, and (c) served by first-class mail upon each of the following:  (i) the Debtors and their counsel; (ii) the U.S. Trustee; (iii) applicable local, state, and federal regulatory entities; (iv) counsel to the Administrative Agents for the First and Second Lien Lenders; (v) counsel to the equity sponsors; (vi) counsel to those certain contractors who have asserted mechanic's liens against the Debtors; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; and (ix) counsel to the Creditors' Committee, so as to be actually received **no later than June 6, 2011 at 4:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed, the Court will hear the Motion, along with any written objection timely served, on a date to be determined by the Court, at the United States Bankruptcy Court on 380 Westminster Street, Providence, Rhode Island 02903 before the Honorable Arthur N. Votolato, United States Bankruptcy Judge.  The moving and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

**PLEASE TAKE FURTHER NOTICE** that if no objection or other response is timely filed, the Motion will be deemed to be unopposed and will be granted unless:  (a) the requested relief is forbidden by law; (b) the requested relief is against public policy; or (c) in the opinion of the Court, the interest of justice requires otherwise.  Only those responses that are timely filed, served, and received will be considered at the hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors.

K&E 19070562

Dated: May 23, 2011
       Providence, Rhode Island

**WINOGRAD, SHINE & ZACKS, P.C.**

Allan M. Shine (Bar No. 0383)
123 Dyer Street
Providence, RI 02903
Telephone:    (401) 273-8300
Facsimile:    (401) 272-5728

- and -

**KIRKLAND & ELLIS LLP**

/s/ *Paul M. Basta*
Paul M. Basta (Admitted *pro hac vice*)
Stephen E. Hessler (Admitted *pro hac vice*)
601 Lexington Avenue
New York, NY 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
paul.basta@kirkland.com
stephen.hessler@kirkland.com

Counsel for the Reorganized Debtors

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| UTGR, INC. d/b/a TWIN RIVER, et al.,[1] | ) | Case No. 09-12418 (ANV) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## MOTION OF REORGANIZED DEBTORS FOR ORDER
## GRANTING FINAL DECREE CLOSING CHAPTER 11 CASES

The above-captioned reorganized debtors (the "Reorganized Debtors") hereby file this motion (the "Motion") seeking entry of an order granting a final decree closing the Reorganized Debtors' Chapter 11 Cases[2] (the "Final Decree").  In support of this Motion, the Reorganized Debtors respectfully state as follows:

### Preliminary Statement

1.     The Reorganized Debtors' Plan has been consummated.  *First*, the Reorganized Debtors have made all but one required distribution (to be made in two remaining installments)[3] under the Plan, including:  (a) payment in the form of approximately $4.1 million in cash distributions to creditors on account of 259 allowed Proofs of Claims and 111 scheduled Claims; (b) issuance of shares of New Common Stock[4] to the First Lien Lenders; and (c) issuance of

---

[1]    The Reorganized Debtors in these chapter 11 cases are BLB Management Services, Inc., BLB Worldwide Holdings, Inc., and UTGR, Inc.

[2]    Capitalized terms used but not defined herein shall have the meaning set forth in the Plan (as defined herein).

[3]    Pursuant to the settlement agreement with the Rhode Island Greyhound Owners' Association (the "RIGOA Settlement"), the RIGOA is entitled to an allowed general unsecured claim against the bankruptcy estate of UTGR in the amount of $3,000,000, to be paid in four quarterly installments of $750,000, beginning at the end of the first calendar quarter after the Effective Date.  *See* Order Approving Amended Settlement Agreement, entered on November 18, 2009 [Docket No. 416].  The first two payments were made on or around December 31, 2010 and March 31, 2011.  The final two payments are due on June 30, 2011 and September 30, 2011, and the Debtors have the liquidity and will make such payments in a timely manner.

[4]    "New Common Stock" means the new common stock of reorganized BLB Worldwide Holdings.

shares of the Second Lien Facility Claim Contingent Value Right[5] to the Second Lien Lenders.

**Second,** the Claims reconciliation process is complete.  The Reorganized Debtors have addressed all 464 filed Proofs of Claim, having allowed almost 300 Claims in full and filed six omnibus claims objections,[6] which addressed the remaining 174 Proofs of Claim with an aggregate value of $1.2 billion, and all related orders have been entered by the Court.[7]

2.      Further, Twin Rivers' operational and financial performance since the Effective Date ratifies the success of the restructuring initiatives implemented through the Chapter 11 Cases and signifies the Reorganized Debtors are poised to maintain or improve upon these gains going forward.  Specifically, since the Effective Date, the Reorganized Debtors have obtained estimated increases in:  (a) gross video lottery terminal ("VLT") revenues by approximately 6.1%; (b) net cash revenues by approximately 5.6%; and (c) VLT payments to the State by approximately 5.1%.

3.      The only item pending before this Court is a ruling on the Final Fee Applications. The Final Fee Applications were all filed by December 20, 2010, presented at a hearing on March 22, 2011, and taken under advisement by this Court.  On the Effective Date, pursuant to Articles VI.S and XI.A.3 of the Plan and Paragraph 82 of the Confirmation Order, the

---

[5]   "Second Lien Facility Claim Contingent Value Right" means the Plan treatment for Holders of Second Lien Facility Claims, which provides for a recovery to holders of Second Lien Facility Claims in the event of a sale or recapitalization of the Reorganized Debtors.

[6]   Reorganized Debtors' First Omnibus Objection to Proofs of Claim, filed on December 23, 2010 [Docket No. 792]; Reorganized Debtors' Second Omnibus Objection to Proofs of Claim, filed on January 19, 2011 [Docket No. 799]; Reorganized Debtors' Third Omnibus Objection to Proofs of Claim, filed on January 27, 2011 [Docket No. 802]; Reorganized Debtors' Fourth Omnibus Objection to Proofs of Claim, filed on February 11, 2011 [Docket No. 815]; Reorganized Debtors' Fifth Omnibus Objection to Proofs of Claim, filed on February 25, 2011 [Docket No. 829]; Reorganized Debtors' Sixth Omnibus Objection to Proofs of Claim, filed on March 4, 2011 [Docket No. 838].

[7]   Order Granting First Omnibus Objection to Proofs of Claim, entered on February 1, 2011 [Docket No. 804]; Order Granting Second Omnibus Objection to Proofs of Claim, entered on February 23, 2011 [Docket No. 823]; Order Granting Third Omnibus Objection to Proofs of Claim, entered on February 23, 2011 [Docket No. 822]; Order Granting Fourth Omnibus Objection to Proofs of Claim, entered on March 3, 2011 [Docket No. 833]; Order Granting Fifth Omnibus Objection to Proofs of Claim, entered on April 4, 2011 [Docket No. 869]; and Order Granting Sixth Omnibus Objection to Proofs of Claim, entered on April 27, 2011 [Docket No. 876].

Reorganized Debtors established and funded the Holdback Escrow Account with an amount equal to the unpaid fees and expenses held back pursuant to the Interim Compensation Order,[8] for payment to professionals upon approval of the Final Fee Applications without further administration by the Court.[9]  Lastly, upon the closing of the Chapter 11 Cases, the Court will retain jurisdiction over any matter pending in these Chapter 11 Cases.[10]

4.  Accordingly, subject to the Court's review and approval of the Final Report, attached hereto as **Exhibit A,** the Reorganized Debtors respectfully submit the Chapter 11 Cases have been fully administered and should be closed.

## Jurisdiction

5.  The United States Bankruptcy Court for the District of Rhode Island (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.  The statutory bases for the relief requested herein are section 350(a) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 3022-1 and 9013-2 of the Local Bankruptcy Rules and Forms for the United States Bankruptcy Court for the District of Rhode Island (the "Local Bankruptcy Rules").

## Background

8.  On June 23, 2009 (the "Petition Date"), each of the Reorganized Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code.  During the Chapter 11 Cases,

---

[8]   Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members [Docket No. 289] (the "Interim Compensation Order").

[9]   Confirmation Order ¶ 82.

[10]   Id. ¶¶ 67, 93.

the Reorganized Debtors operated their businesses and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner was made in these Chapter 11 Cases.

9.      On June 30, 2009, the United States Trustee for the District of Rhode Island (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") [Docket No. 85].

10.      On February 10, 2010, the Reorganized Debtors filed the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 529] (the "Plan").  The Plan was fully consensual and premised on and effectuated the terms of both the Restructuring Agreement[11] and the Global Resolution[12]—eliminating nearly $300 million in senior secured debt, providing unsecured creditors with a substantial recovery, and improving the Reorganized Debtors' financial and operational viability.  Every class of creditors eligible to vote on the Plan voted in favor of confirmation by margins vastly exceeding those required by the Bankruptcy Code.  On June 24, 2010, after the passage of certain Legislative Initiatives, including, among other things, the prohibition of live greyhound racing, the Court entered an order confirming the Plan [Docket No. 717] (the "Confirmation Order").

11.      On November 5, 2010•  with amendments to the Master VLT Contract approved and a new video lottery retail license attained•  the Reorganized Debtors emerged from chapter 11 (the "Effective Date").

---

[11]   The Restructuring Agreement reached prepetition between the Reorganized Debtors, over 50% of the First Lien Lenders, a substantial amount of the Second Lien Lenders, and the State provided for the terms of a restructuring transaction that provided for, most significantly, the elimination of nearly $300 million in senior secured debt and the obtainment of certain legislative initiatives that enhanced the Reorganized Debtors' post-Effective Date financial viability.

[12]   The Global Resolution secured the support of all of the Reorganized Debtors' key creditor constituencies for the Plan and provided for, inter alia, payment to unsecured creditors of 65% of their allowed claims (or up to $2,500 through a convenience class).

4

12.     The Reorganized Debtors have completed all but one distribution contemplated by the Plan,[13] paid all quarterly fees owed to the U.S. Trustee, and paid all amounts owed to the Clerk of the Court as of the date hereof.

13.     Upon and since the Effective Date, the Reorganized Debtors have addressed all 464 Proofs of Claim filed in these Chapter 11 Cases, which asserted an aggregate amount of $1.8 billion.[14]   The Reorganized Debtors made all required payments to Holders of Allowed Claims and filed six omnibus claims objections addressing the remaining 174 Proofs of Claim with an aggregate value of $1.2 billion•  with all six approved by the Court.[15]

14.     All Final Fee Applications were filed by December 20, 2010, on which the Court held a hearing on March 22, 2011.  The Final Fee Applications are currently under advisement by the Court.

15.     Excluding the Final Fee Applications, there are no motions, contested matters, or adversary proceedings that remain unresolved in the Chapter 11 Cases.

## Relief Requested

16.     By this Motion, the Reorganized Debtors respectfully request that the Court enter a Final Decree, pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Bankruptcy Rule 9013-2(a)(2), substantially in the form attached hereto as **Exhibit B**, closing the Reorganized Debtors' Chapter 11 Cases.

## Basis for Relief

17.     Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."  11 U.S.C.

---

[13]   Supra note 3.

[14]   Supra note 6.

[15]   Supra note 6, 7.

K&E 19070562

§ 350(a).  Bankruptcy Rule 3022, which implements section 350 of the Bankruptcy Code, further provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."  Fed. R. Bankr. P. 3022.

18.    The term "fully administered" is not defined by either the Bankruptcy Code or the Bankruptcy Rules.  The Advisory Committee Notes to Bankruptcy Rule 3022, however, set forth the following non-exclusive list of factors to be considered when determining whether a case has been fully administered:  (a) whether the order confirming the plan has become final; (b) whether deposits required by the plan have been transferred; (c) whether the property proposed by the plan to be transferred has been transferred; (d) whether the debtor [or its successor] has assumed the business or management of the property dealt with by the plan; (e) whether payments under the plan have commenced; and (f) whether all motions, contested matters, and adversary proceedings have been finally resolved.  These six factors, however, are merely guidelines that aid a court's determination, and each of the factors need not be present before a court enters a final decree.  See In re Mold Makers, Inc., 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990).

19.    Courts have also held that a bankruptcy estate is "fully administered" when a plan has been substantially consummated as defined by section 1101(2) of the Bankruptcy Code. See In re BankEast Corp., 132 B.R. 665, 668 n.3 (Bankr. D.N.H. 1991).  To determine whether a bankruptcy estate is substantially consummated for the purpose of entering a final decree, a court may apply the requirements established by section 1101(2) to the case sought to be closed.  See Walnut Assoc. v. Saidel, 164 B.R. 487, 492 (E.D. Pa. 1994).  Section 1102(2) defines "substantial consummation" as follows:

> (a)    Transfer of all or substantially all of the property proposed by the plan to be transferred;

    (b)      Assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

    (c)      Commencement of distributions under the plan.[16]

20.    Further, a debtor may close its chapter 11 case before its plan distributions are completed.  See, e.g., Wells Fargo Bank, N.A. v. Nicolaysen (In re D&L Nicolaysen), 228 B.R. 252, 261 (Bankr. E.D. Cal. 1998) (closing case before distribution of estate assets was completed); In re Jordan Mfg., Co., 138 B.R. 30, 38-40 (Bankr. C.D. Ill. 1992) (closing cases before completion of installment payments to creditors pursuant to a confirmed plan of reorganization).

21.    As of the filing of the Motion, only the Final Fee Applications have not been resolved fully.  The Reorganized Debtors respectfully submit that the Chapter 11 Cases can be closed prior to the adjudication of the Final Fee Applications by this Court.  As mentioned earlier, pursuant to Articles VI.S and XI.A.3 of the Plan and Paragraph 82 of the Confirmation Order, the Reorganized Debtors have already established and funded the Holdback Escrow Account with an amount equal to the unpaid fees and expenses held back pursuant to the Interim Compensation Order, for payment to professionals upon approval of the Final Fee Applications without further administration by the Court.

22.    As described above, (a) the Confirmation Order has been entered and the Plan has become effective, (b) all but one distribution to creditors under the Plan have been completed, and (c) there are no contested matters pending before this Court concerning the Reorganized Debtors.

---

[16]  It is also significant that in section 1101(2) of the Bankruptcy Code, Congress used the word "substantially."  If Congress had desired cases to be closed only when *completely* consummated, Congress would have used that word.

K&E 19070562

23.     The Reorganized Debtors believe that the relevant factors support finding the entry of the Final Decree is appropriate at this time.  Accordingly, the Reorganized Debtors request that the Court enter a Final Decree closing the Reorganized Debtors' Chapter 11 Cases.

## **Final Report**

24.     In accordance with the requirements of Local Bankruptcy Rule 3022-1, the Final Report is attached hereto as **Exhibit A**.

## **Notice**

25.     The Reorganized Debtors have provided notice of this Motion through the Court's electronic filing system and via overnight mail, email, or fax to:  (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) applicable local, state, and federal regulatory entities; (d) counsel to the Administrative Agents for the First and Second Lien Lenders; (e) counsel to the equity sponsors; (f) counsel to those certain contractors who have asserted mechanic's liens against the Debtors; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; and (i) any persons who have filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

## **No Prior Request**

26.     No prior objection for the relief requested herein has been made to this or any other court.

K&E 19070562

WHEREFORE, the Reorganized Debtors respectfully request entry of an order granting a

Final Decree, substantially in the form attached hereto as **Exhibit B**, and such other or further

relief as is just and proper.

Dated: May 23, 2011                             **WINOGRAD, SHINE & ZACKS, P.C.**
      Providence, Rhode Island             Allan M. Shine (Bar No. 0383)
                                          123 Dyer Street
                                          Providence, RI 02903
                                          Telephone:     (401) 273-8300
                                          Facsimile:     (401) 272-5728

                                          - and -

                                          **KIRKLAND & ELLIS LLP**

                                          /s/ *Paul M. Basta*
                                          Paul M. Basta (admitted *pro hac vice*)
                                          Stephen E. Hessler (admitted *pro hac vice*)
                                          601 Lexington Avenue
                                          New York, NY 10022-4611
                                          Telephone:     (212) 446-4800
                                          Facsimile:     (212) 446-4900
                                          paul.basta@kirkland.com
                                          stephen.hessler@kirkland.com

                                          Counsel for the Reorganized Debtors

9

# **EXHIBIT A**

**Final Report**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| UTGR, INC. d/b/a TWIN RIVER, <u>et al.</u>,[1] | ) Case No. 09-12418 (ANV) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## FINAL REPORT

In accordance with the requirements of Local Bankruptcy Rule 3022-1, this Final Report describes (a) the proposed fees and expenses for the retained professionals who rendered services in the Chapter 11 Cases; and (b) the distributions made under the Plan.

| $4,428,757.02 | PROPOSED FEES AND EXPENSES FOR ATTORNEYS FOR DEBTORS (includes Kirkland & Ellis LLP and Winograd Shine & Zacks, P.C. (see Appendix 1) |
|---|---|
| $5,077,158.97 | OTHER PROPOSED PROFESSIONAL FEES AND EXPENSES (see Appendix 1) |

| N/A | TRUSTEE FEE (if applicable) |
|---|---|
| N/A | FEE FOR ATTORNEY FOR TRUSTEE (if applicable) |

| N/A | % DIVIDEND PAID / TO BE PAID |
|---|---|
| N/A | FUTURE DIVIDENDS |

STEPS TAKEN TO CONSUMMATE PLAN:

ALL BUT ONE REQUIRED DISTRIBUTION UNDER THE PLAN COMPLETED (See Appendix 2)[2]

---

[1]   The Reorganized Debtors in these chapter 11 cases are BLB Management Services, Inc., BLB Worldwide Holdings, Inc., and UTGR, Inc.

[2]   Pursuant to the settlement agreement with the Rhode Island Greyhound Owners' Association (the "RIGOA Settlement"), the RIGOA is entitled to an allowed general unsecured claim against the bankruptcy estate of UTGR in the amount of $3,000,000, to be paid in four quarterly installments of $750,000, beginning at the end of the first calendar quarter after the Effective Date.  *See* Order Approving Amended Settlement Agreement, entered on November 18, 2009 [Docket No. 416].  The first two payments were made on or around December 31, 2010 and March 31, 2011.  The final two payments are due on June 30, 2011 and September 30, 2011, and the Debtors have the liquidity and will make such payments in a timely manner.

**APPENDIX 1**

## PROFESSIONAL FEES AND EXPENSES[1]

| PROFESSIONAL | ROLE | FEES AND EXPENSES PAID PURSUANT TO INTERIM COMPENSATION ORDER | FEES AND EXPENSES HELD BACK PURSUANT TO INTERIM COMPENSATION ORDER | TOTAL PROPOSED FEES AND EXPENSES |
|---|---|---|---|---|
| Kirkland & Ellis LLP | Debtors' Restructuring Counsel | $3,651,815.43 | $617,719.50 | $4,269,534.93 |
| Winograd, Shine & Zacks, P.C. | Debtors' Restructuring Co-counsel | $128,674.39 | $30,547.70 | $159,222.09 |
| Lazard Freres & Co. LLC | Debtors' Investment Banker and Financial Advisor | $1,118,736.83 | $264,927.83 | $1,383,664.66 |
| Zolfo Cooper LLC | Debtors' Restructuring Consultant and Special Financial Advisor | $1,144,338.57 | $187,398.56 | $1,331,737.13 |
| Fiondella, Milone & LaSaracina LLP | Debtors' Auditors | $61,675.32 | $26,816.40 | $88,491.72 |
| Pricewaterhouse Coopers LLP | Debtors' Independent Accountant and Tax Advisor | $438,146.48 | $108,972.90 | $547,119.38 |
| Ferrucci Russo P.C. | Debtors' Retained Counsel | $235,939.43 | $74,215.00 | $310,154.43 |
| Adler Pollock & Sheehan P.C. | Debtors' Retained Counsel | $195,073.20 | $45,571.75 | $240,644.95 |
| Goldberg Law Offices | Debtors' Government Relations Consultant | $120,000 | $40,000.00 | $160,000.00 |
| Sullivan & Company CPAs LLC | Debtors' Auditors | $20,440.00 | $12,610.00 | $33,050.00 |
| Duffy & Sweeney Ltd. | Debtors' Corporate Trademark Counsel | $23,956.42 | $6,860.25 | $30,816.67 |

---

[1]   All fees and expenses listed herein are pending final approval by the Court.

| PROFESSIONAL | ROLE | FEES AND EXPENSES PAID PURSUANT TO INTERIM COMPENSATION ORDER | FEES AND EXPENSES HELD BACK PURSUANT TO INTERIM COMPENSATION ORDER | TOTAL PROPOSED FEES AND EXPENSES |
|---|---|---|---|---|
| Robert M. Silva | Debtors' Government Relations Consultant | $48,533.31 | $12,133.33 | $60,666.64 |
| Hinckley, Allen & Snyder LLP | Debtors' Corporate Counsel and Government Relations Consultant | $315,548.48 | $65,728.33 | $381,276.81 |
| Jager Smith P.C. | Creditors' Committee's Counsel | $273,824.62 | $69,823.18 | $343,647.80 |
| Boyajian, Harrington & Richardson, Inc. | Creditors' Committee's Counsel Co-counsel | $28,806.72 | $8,799.95 | $37,606.67 |
| Verdolino & Lowey, P.C. | Creditors' Committee's Financial Advisors | $63,601.11 | $64,681.00 | $128,282.11 |

## Total Proposed Fees and Expenses

| | |
|---|---|
| **Total Proposed Fees and Expenses for Debtors' Attorneys (including Kirkland & Ellis LLP and Winograd, Shine & Zacks P.C.)** | $4,428,757.02 |
| **Total Proposed Fees and Expenses for All Other Retained Professionals** | $5,077,158.97 |
| **Total Proposed Fees and Expenses for All Professionals** | $9,505,915.99 |

## **APPENDIX 2**

## DISTRIBUTIONS MADE PURSUANT TO THE PLAN[1]

On or after the Effective Date, the following distributions were made to, or provided for,

the various classes of Allowed Claims pursuant to the Plan and the Confirmation Order.

| CLASS | TREATMENT |
|---|---|
| Administrative Expense Claims | Holders of Allowed Administrative Expense Claims were paid in full in Cash on the later of the Distribution Date under the Plan, the date such Administrative Expense Claim was Allowed, and the date such Allowed Administrative Expense Claim became due and payable, or as soon thereafter as was practicable. |
| Priority Tax Claims | Holders of Allowed Priority Tax Claims received payment in full in Cash pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, except to the extent that a Holder of an Allowed Priority Tax Claim agreed to less favorable treatment. |
| Class A-1: First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against BLB Worldwide Holdings. | Each Holder of an Allowed First Lien Facility Guarantee Claim and/or Allowed Swap Agreements Guarantee Claim against BLB Worldwide Holdings received on the Distribution Date its Pro Rata share of (i) the New Common Stock and (ii) the New Senior Secured Credit Facility, which consideration was distributed as set forth in Class B-1. |
| Class A-2: Second Lien Facility Guarantee Claims against BLB Worldwide Holdings | Each Holder of an Allowed Second Lien Facility Guarantee Claim against BLB Worldwide Holdings received on the Distribution Date its Pro Rata share of the Second Lien Facility Claim Contingent Value Right, which consideration was distributed as set forth in Class B-2. |
| Class A-3: Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim against BLB Worldwide Holdings received payment in full in Cash on the Distribution Date or as soon thereafter as was practicable. |
| Class A-4: Secured Claims | Except to the extent that a Holder of an Allowed Secured Claim against BLB Worldwide Holdings and the Debtors agreed to less favorable treatment to such Holder, on the Distribution Date or as soon thereafter as was reasonably practicable, each Allowed Secured Claim against BLB Worldwide Holdings was reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. |
| Class A-5: General Unsecured Claims and Rejection Damages Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Worldwide Holdings and the Debtors agreed to less favorable treatment to such Holder, each Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Worldwide Holdings was paid an amount equal to 65% of its Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim in Cash on the Distribution Date or as soon thereafter as was practicable. |

---

[1]   Capitalized terms used but not defined herein shall have the meaning set forth in the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 529].

| CLASS | TREATMENT |
|---|---|
| Class A-6: Intercompany Claims | Allowed Intercompany Claims against BLB Worldwide Holdings were reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code or received no distribution on account of such Claims. |
| Class A-7: Interests | Interests in BLB Worldwide Holdings were cancelled, released, and extinguished and the Holders of such Interests received no distribution under the Plan on account thereof. |
| Class B-1: First Lien Facility Claims and Swap Agreements Claims against BLB Management Services | Each Holder of an Allowed First Lien Facility Claim and/or Allowed Swap Agreements Claims against BLB Management Services received on the Distribution Date its Pro Rata share of (i) the New Common Stock and (ii) the New Senior Secured Credit Facility. |
| Class B-2: Second Lien Facility Claims against BLB Management Services | Each Holder of an Allowed Second Lien Facility Claim against BLB Management Services received on the Distribution Date its Pro Rata share of the Second Lien Facility Claim Contingent Value Right. |
| Class B-3: Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim against BLB Management Services was paid in full in Cash on the Distribution Date or as soon thereafter as was practicable. |
| Class B-4: Secured Claims | Except to the extent that a Holder of an Allowed Secured Claim against BLB Management Services and the Debtors agreed to less favorable treatment to such Holder, on the Distribution Date or as soon thereafter as was reasonably practicable, each Allowed Secured Claim against BLB Management Services was reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. |
| Class B-5: General Unsecured Claims and Rejection Damages Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Management Services and the Debtors agreed to less favorable treatment to such Holder, each Holder of an Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim against BLB Management Services was paid an amount equal to 65% of their Allowed General Unsecured Claim and/or Allowed Rejection Damages Claim in Cash on the Distribution Date or as soon thereafter as was practicable. |
| Class B-6: Intercompany Claims | At the Debtors' or Reorganized Debtors' option, and except as otherwise provided in the Plan, Allowed Intercompany Claims against BLB Management Services were reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code or received no distribution on account of such Claims. |
| Class B-7: Intercompany Interests | Intercompany Interests in BLB Management Services were reinstated in exchange for the Reorganized Debtors' agreement to make certain distributions to the Holders of Allowed General Unsecured Claims and Rejection Damages Claims against BLB Management Services, to provide management services to certain other Reorganized Debtors, and to use certain funds and assets, to the extent authorized in the Plan, to satisfy certain obligations between and among such Reorganized Debtors. |

| CLASS | TREATMENT |
|---|---|
| Class C-1:  First Lien Facility Guarantee Claims and Swap Agreements Guarantee Claims against UTGR | Each Holder of an Allowed First Lien Facility Guarantee Claim and/or Allowed Swap Agreements Guarantee Claim against UTGR received on the Distribution Date its Pro Rata share of (i) the New Common Stock and (ii) the New Senior Secured Credit Facility, which consideration was distributed as set forth in Class B-1. |
| Class C-2:  Second Lien Facility Guarantee Claims against UTGR | Each Holder of an Allowed Second Lien Facility Guarantee Claim against UTGR received on the Distribution Date its Pro Rata share of the Second Lien Facility Claim Contingent Value Right, which consideration was distributed as set forth in Class B-2. |
| Class C-3:  Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim against UTGR was paid in full in Cash on the Distribution Date or as soon thereafter as was practicable. |
| Class C-4:  Secured Claims | Except to the extent that a Holder of an Allowed Secured Claim against UTGR and the Debtors agreed to less favorable treatment to such Holder, on the Distribution Date or as soon thereafter as was reasonably practicable, each Allowed Secured Claim against UTGR was reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. |
| Class C-5:  General Unsecured Claims, the RIGOA Claim, the Dimeo Claim, and Rejection Damages Claims | Except to the extent that a Holder of an Allowed Class C-5 Claim against UTGR and the Debtors agreed to less favorable treatment to such Holder, each Holder of an Allowed Class C-5 Claim against UTGR was paid an amount equal to 65% of its Allowed Class C-5 Claim in Cash on the Distribution Date or as soon thereafter as was practicable. |
| Class C-6:  Convenience Claims | Each Holder of a Convenience Claim against UTGR was paid in full in Cash on the Distribution Date or as soon thereafter as was practicable. |
| Class C-7:  Intercompany Claims | At the Debtors' or Reorganized Debtors' option, and except as otherwise provided in the Plan, Allowed Intercompany Claims against UTGR were reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code or received no distribution on account of such Claims. |
| Class C-8:  Intercompany Interests | Intercompany Interests in UTGR were reinstated in exchange for the Reorganized Debtors' agreement to make certain distributions to the Holders of Allowed General Unsecured Claims and Rejection Damages Claims against UTGR, to provide management services to certain other Reorganized Debtors, and to use certain funds and assets, to the extent authorized in the Plan, to satisfy certain obligations between and among such Reorganized Debtors. |

K&E 19070562

## EXHIBIT B

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| UTGR, INC. d/b/a TWIN RIVER, et al.,[1] | ) | Case No. 09-12418 (ANV) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER GRANTING FINAL DECREE CLOSING CHAPTER 11 CASES

Upon the motion (the "Motion")[2] of the above-captioned reorganized debtors in the above-captioned chapter 11 cases (the "Reorganized Debtors") for a Final Decree closing the Chapter 11 Cases; and as more fully set forth in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that notice of the Motion was appropriate under the particular circumstances; and the Court having reviewed the Motion, and having determined that it is appropriate to determine the Motion without a hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor:

---

[1]    The Reorganized Debtors in these chapter 11 cases are BLB Management Services, Inc., BLB Worldwide Holdings, Inc., and UTGR, Inc.

[2]    Capitalized terms used but not defined herein shall have the meaning set forth in the Motion.

**THE COURT FINDS THAT:**

A.      The Confirmation Order has become final.

B.      All property required to be transferred by the Plan has been transferred.

C.      Each of the Reorganized Debtors has assumed the business and the management of the property dealt with by the Plan.

D.      All payments required under the Plan have been made, excluding: (i) the two remaining payments due under the RIGOA Settlement,[3] and (ii) certain payments on account of the Final Fee Applications.

E.      All claims, motions, contested matters, and adversary proceedings pending during the Chapter 11 Cases have been resolved (excluding the Court's pending ruling on the Final Fee Applications).

F.      The cases have been fully administered and substantially consummated (pending this Court's ruling on the Final Fee Applications).

G.      All statutory fees of the cases have been paid.

**THE COURT THEREFORE ORDERS, ADJUDGES, AND DECREES that:**

1.      The Motion is granted as provided herein.

2.      Pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022, the Court hereby enters this Order granting a Final Decree and orders the cases identified below closed pursuant to the terms of this Order:

| DEBTOR | CASE NUMBER |
|---|---|
| UTGR, Inc. d/b/a Twin River | 09-12418 |
| BLB Management Services, Inc. | 09-12419 |
| BLB Worldwide Holdings, Inc. | 09-12420 |

---

[3]     Pursuant to the settlement agreement with the Rhode Island Greyhound Owners' Association (the "RIGOA Settlement"), the RIGOA is entitled to an allowed general unsecured claim against the bankruptcy estate of UTGR in the amount of $3,000,000, to be paid in four quarterly installments of $750,000, beginning at the end of the first calendar quarter after the Effective Date.  *See* Order Approving Amended Settlement Agreement, entered on November 18, 2009 [Docket No. 416].  The first two payments were made on or around December 31, 2010 and March 31, 2011.  The final two payments are due on June 30, 2011 and September 30, 2011, and the Debtors have the liquidity and will make such payments in a timely manner.

2

3.       Entry of this Order granting a Final Decree is without prejudice to the rights of the Reorganized Debtors or any other party in interest to seek to reopen these cases for good cause shown pursuant to section 350(b) of the Bankruptcy Code.

4.       As set forth in Paragraphs 67 and 93 of the Confirmation Order, the Court shall retain jurisdiction to enforce or interpret its own orders pertaining to the Chapter 11 Cases and over any matter pending in the Chapter 11 Cases, including the Final Fee Applications.

5.       The Final Report of the Reorganized Debtors is approved.

6.       The Reorganized Debtors are authorized to take all actions necessary to effectuate this Order.

7.       Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(g), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated:   _____, 2011
              Providence, Rhode Island

_____
Arthur N. Votolato
United States Bankruptcy Judge

3